WEIR, Surviving Ex'r of STONE, vs. MOSHER and another.

One of two executors may release a mortgage belonging to the estate, without the signature or assent of his co-executor.

Although the release of a mortgage will be *voidable* if made by an executor, with the knowledge of the mortgagor, upon a consideration moving only to him personally and not to the estate, yet it is not *void ;* and the mortgage cannot be enforced without first avoiding the release.

In an action by an executor to foreclose a mortgage to his testator, which the evidence shows to have been improperly released by a former co-executor, the court should either dismiss the action without prejudice to plaintiff's right to bring a new one, or, upon proper application and upon terms, should direct an amendment to the complaint, so that the release may be vacated in such action.

Where executors were charged by the will with a special trust, to pay a certain person annually, during her life, a sufficient sum for her support, and were directed to retain in their hands, out of specified securities, sufficient funds for that purpose, a release by one of them of a portion of said securities will not be held void on the ground that they held the same only as a special trust, unless it appears that the estate had been settled and the securities passed to them as trustees, or that there were not sufficient funds out of said securities still in their hands to answer the exigency of the trust.

APPEAL from the Circuit Court for *Racine* County.

This action was brought in 1862, to foreclose a mortgage given by the defendant *William Mosher* to Reuben Stone, the plaintiff's testator, in 1841, to secure a bond for $1000, with interest. The plaintiff's co-executor, Reuben F. Stone, died in November, 1858. *William Mosher* answered denying any indebtedness, and alleging that in June, 1858, he paid said Reuben F. Stone the full amount of the mortgage debt, and that said Reuben F. thereupon discharged the mortgage of record. The defendant *Holmes* answered alleging the same defense, and that he was a subsequent mortgagee for value

from *William Mosher*. On the trial, the plaintiff put in evidence the bond and mortgage sued on, and also the last will of said Reuben Stone, with a codicil annexed. By the will a variety of bequests and devises were made, covering the whole of the testator's property ; after which was the following : " Eighth. I give and devise all my real and personal estate, of what nature or kind soever, to my friend Samuel Ruste * * and my son Reuben F. Stone, the executors of this my last will and testament, hereafter nominated and appointed by me, in trust for the payment of my just debts, and the legacies and charges upon the said estate heretofore specified, to be held and possessed by them, with power to sell and dispose of the same at public or private sale, at such time or times, and upon such terms and in such manner as to them shall seem meet * * ." Then followed a clause appointing said Ruste and Reuben F. Stone as executors. By the codicil, which was dated June 10, 1856, the appointment of said Ruste as executor was revoked, and *James H. Weir* (the plaintiff) was appointed co-executor with Reuben F. Stone. This codicil also recites that said testator, since the making of the will, had intermarried with Betsey C. Wells, of Racine, Wis., and that by their ante-nuptial contract it was agreed that neither of them was to be entitled, by reason of the marital relation, to any portion of the other's property, but that said Betsey was to have a support during her life ; and said codicil directs said executors, after the decease of said testator, to carry out said contract, and that they retain in their hands sufficient funds, out of securities then in the hands of Strong & Fuller, for the support of said Betsey during her life, and to pay over the same annually as she should require. The plaintiff proved by the testimony of H. T. Fuller, Esq., that the bond and mortgage in suit were in the possession of Strong & Fuller at the date of said codicil.

The defendant *William Mosher* put in evidence an assignment of said bond and mortgage (and other bonds and mort-

gage) executed by said Reuben Stone to Reuben F. Stone, June 10th, 1856, and recorded the same day; also the record of satisfaction and discharge of the mortgage in suit, executed by R. F. Stone, as executor of the estate of Reuben Stone. The plaintiff objected to the reading of the latter, on the ground that it purported to be executed by only one of the two executors, and also on the ground that under the will the mortgage was trust property, and the executors the trustees, one of whom could not act without the other. Objection overruled. The plaintiff then put in evidence a paper writing, dated April 16th, 1857, and signed by R. F. Stone, in which he acknowledges that said assignment of this and other mortgages &c. to him was voluntary, and without any consideration, and that he holds said mortgages &c. in trust for the benefit of said Reuben Stone, and his legal representatives. The defendant *William Mosher* testified that he never paid the mortgage debt in money, but had had a transaction with R. F. Stone which he claimed as payment: "I sold to R. F. Stone and my brother, Alexander Mosher, and Albert Wells, a forty acre wood lot. I owed my brother for former deal; he had my note for between $700 and $800. R. F. Stone proposed to me to purchase the lot; he and I finally settled on $62.50 an acre for it, and he to pay the previous year's taxes; I said to him, 'If I sell the lot, I do it to cancel this mortgage, and also my brother's note.' He agreed to it; I knew it belonged to the estate; I knew of no assignment; I considered the mortgage part pay for the lot. This was about December 1st, 1857. There were no writings at that time. It was timbered land; they cut the timber off that winter; I understood they were to do so when I sold it. In February I gave the deed; made it to Alexander Mosher, at Stone's request; there were no other writings at that time; nothing was said about the mortgage at that time, nor until it was discharged. I requested him (R. F. Stone) to discharge it the day he did so, because I owed *Holmes* and wished to give him security by a mortgage on the

same premises. Stone told me the original mortgage was east when he discharged it on the record. Some time after Stone's death my brother settled up with me; gave me up my note and paid the balance of between $700 and $800." On cross-examination witness said that he considered the wood lot sold by him worth $70 per acre. The plaintiff, in his own behalf, testified that the bond and mortgage in question were in Washington county, N. Y., from the summer of 1857 until sent here for prosecution in this suit; that he (witness) never knew of any payment having been made by defendant prior to the commencement of this suit; that he never authorized R. F. Stone to act for him or use his name in connection with this mortgage; that the estate of Reuben Stone had never received anything upon the mortgage; that a claim for the amount of the proceeds of the bond and mortgage in suit was presented by witness to the commissioners of the estate of R. F. Stone, and that nothing was ever obtained from that estate to apply on the mortgage. Another witness testified that the records of the county court of said county were consumed by fire in 1861. Alexander Mosher, as a witness for defendant, testified: " I purchased land of my brother, the defendant, with R. F. Stone; Mr. Stone and I negotiated the bargain together; the price was $2,500, to be paid as follows: Reuben Stone's mortgage against *William*, and a note which I held against him were to be allowed, and the balance was to be paid in money. We bought it for the timber and wood. Stone proposed that the deed should be made to me for convenience; I held it for myself, Stone and Wells; my brother so understood it; there was no pretense that the estate was to be a partner; it was understood by *William* that we were buying the land for ourselves, with a view of cutting off the timber, under the firm name of " Mosher, Stone & Co."

The circuit judge found that *William Mosher* had fully paid the bond, and that the mortgage had been discharged; and

rendered judgment for the defendants; from which the plaintiff appealed.

*Cary & Pratt*, for appellant, argued that the bond and mortgage in suit being a part of the sureties in the hands of Strong & Fuller, referred to in the codicil, the executors were, as to them, trustees of an express trust, and the act of one of the trustees without the other was invalid. 2 Story's Eq. Jur., 1280 ; *People v. Miner*, 32 Barb., 612. 2. The transaction between defendant *Mosher* and Reuben F. Stone was a fraud upon the *cestui que trust*, participated in by *Mosher*. It was void, whether the plaintiff and Reuben F. Stone are considered as executors simply or as trustees of an express trust. *Pvzey v. Senier*, 9 Wis., 370 ; 2 Wms. on Ex'rs, 798 *et seq.*; *Bonney v. Ridgard*, 1 Cox, 145 ; *Scott v. Tyler*, Dickens, 712 ; *Colt v. Lasnier*, 9 Cow., 320, and cases there cited.

*Henry T. Fuller*, for respondent :

The testimony shows that one of the executors received the full amount of the debt, in land at its cash value, which land, at the request of the executor, and for his convenience, was conveyed to Alexander Mosher. If the executor wished to appropriate the proceeds of this mortgage, could he not have done it more easily if the amount had been paid in money ? 2. The proof is that defendant *Mosher's* sole object in making the sale of the land was to pay the mortgage and another debt, and that he did pay both at the lowest market value of the land sold. There was no fraud or covin here ; the defendant did not obtain the testator's effects in any manner. The mortgage was not discharged by the executor for his own debt, the land having been sold to pay the debt due on the mortgage. The simple fact that the debt was paid in land does not make that payment void. 3. The plaintiff presented a claim for the amount of this bond and mortgage against the estate of Reuben F. Stone, and it was allowed. There is no proof that the estate is not ample to pay this claim, and the court will not *presume* it to be insolvent. There can be no

fraud without a damage—no fraud to an estate without a *devastavit*, and nothing of the kind has been shown here.

*By the Court*, DIXON, C. J.   It is of the plaintiff and his deceased co-executor *as executors*, and not as trustees under the will, that we must speak.   It is not shown that the estate was settled, and the securities passed to them as trustees; nor does it appear but that sufficient funds out of the securities are still in the hands of the plaintiff as surviving executor to answer the exigencies of the trust.

Viewing the case then as one involving the powers and duties of the executors as such, we hold :   1. That the satisfaction of the mortgage by the deceased executor, Stone, is *prima facie* valid—that it may be voidable, but is not void.   It was competent for Stone to release the mortgage without the assent or signature of the plaintiff.   *Jackson v. Shaffer*, 11 Johns., 513; *Douglass v. Satterlee*, id., 16 ;  *Wheeler v. Wheeler*, 9 Cow., 34 ;  *Murray v. Blatchford*, 1 Wend., 583 ; *Bogert v. Hertell*, 4 Hill, 492 ; 2 Williams on Executors, 810.

2. That there can be no foreclosure of the mortgage while the satisfaction stands.   Being *prima facie* valid, it bars the remedy by foreclosure.   It must first be set aside, either by the voluntary agreement of the parties or the judgment of a competent court.   Before this is done, the plaintiff cannot come in to assert the validity of the mortgage.   The setting aside of the satisfaction constitutes of itself a distinct ground of action.   The plaintiff might sue upon it separately, or he might join it in the action to foreclose.   But he has done neither. He sues to foreclose, leaving the satisfaction in full force.

3. That upon the facts shown in evidence, the deceased executor, Stone, was guilty of a *devastavit* in satisfying the mortgage, and consequently that the satisfaction is liable, upon a proper application, to be set aside for that reason.   The law upon this point is correctly stated in 2 Williams on Executors, 799, 800.   If a man concerts with an executor, by apply-

ing the value of the testator's effects to the purchase of other subjects, for his own behoof, or in any other manner contrary to the duty of the office of executor, such contract will involve the seeming purchaser or pawnee, and make him liable to the full value.   And again, however it may be at law, it seems to be now well established in equity, that, generally speaking, the executor or administrator can make no valid sale or pledge of the assets as a security for, or in payment of, his own debt : on the principle that the transaction itself gives the purchaser or mortgagee notice of the misapplication, and necessarily involves his participation in the breach of duty. The deceased executor, Stone, and one Wells and Alexander Mosher, a brother of the mortgagor, bought a piece of land of the mortgagor, who, by their direction, conveyed it to his brother Alexander.   They bought it for their own use.  Stone, in part payment for the land, released the mortgage, which belonged to the estate of his testator.   This was a clear misapplication of the assets and violation of his duty as executor. The facts were well known to the mortgagor.   They could not have been otherwise, and when called to the stand as a witness he makes a full and truthful statement.   The transaction must, therefore, whether so intended on the part of the mortgagor or not, be regarded as collusive.  He knew, or ought to have known, that the executor was violating his duty, and participated in such violation.    Hence the satisfaction must be set aside when proper proceedings for that purpose are instituted.

Under these circumstances we think the court below ought not to have given final judgment in favor of the defendant, the mortgagor ; but should either have dismissed the action without prejudice to the right of the plaintiff to bring a new suit, or, upon proper application and on such terms as might be just, have directed an amendment of the complaint so as to include a statement of the cause of action for relief against the satisfaction, and to have it vacated.   The judgment will

therefore be reversed, but without costs to the appellant, and the cause remanded, with directions that it be dismissed without prejudice, &c., unless the appellant, upon due notice, moves to amend as it is above indicated that he may do.