HEMMY, Administrator, Respondent, vs. HAWKINS, Appellant.

*January 14 — January 31, 1899.*

*Estates of decedents: Pledge of assets by executor: Misappropriation of proceeds: Notice.*

1. A pledge by an executor of the assets of the estate, even though made to secure a loan for his own personal benefit, is valid if the pledgee has no knowledge or notice of the intended perversion of the proceeds, but takes the property in good faith.

2. An executor wrote to the defendant, from whom he proposed to borrow money, that the county judge would make an order in regard to a loan, and then he would be ready to take it.   After receiving a favorable reply, he sent to the defendant a note signed by him as executor, also a note and mortgage belonging to the estate, assigned by him as executor, as collateral.   In a letter accompanying the instruments he requested the defendant to place the larger part of the money in the bank to his (the executor's) credit, and retain the balance for awhile "as that is mainly to pay expenses of administration, part of it coming to me."   *Held,* insufficient to charge the defendant with knowledge that the loan was not made for the benefit of the estate.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge.   *Reversed.*

The plaintiff, as administrator *de bonis non* with the will

annexed of the estate of Lucinda Cutler, deceased, brings
this action to recover the value of a note of $3,500 and in-
terest, executed by George Hams to said deceased, May 13,.
1889, together with the real-estate mortgage securing the
same.   The complaint contains the necessary allegations
showing the representative character of the plaintiff, that
the note and mortgage are assets of said estate, and that the
same have been converted by the defendant to his own use.
The answer admits the representative character of the plaint-
iff, and the execution of the note and mortgage, and alleges
ownership in himself of said note and mortgage, as collateral
security to a loan of $2,500, made by him March 20, 1890,
to one Rambusch, who was then executor of the estate of
Lucinda Cutler, and assigned the note and mortgage to the
defendant as such executor.   There was little, if any, dispute
about the facts, and they were substantially as follows:

The note and mortgage in question were executed on the
13th day of May, 1889, to the order of Lucinda Cutler, who
was then alive, and were owned by her.   On the same day
she made her will, by which she gave her husband, John A.
Cutler, the use of her household furniture and the interest
on $1,500 during his natural life, and also gave other lega-
cies, amounting to $2,000, to her children and grandchildren,
and provided for the division of the $1,500 in which her hus-
band had a life interest, among her children, after his death.
The will also appointed William T. Rambusch, of Juneau,
executor and trustee for the investment of the $1,500.   Lu-
cinda Cutler shortly afterwards died, and the will was pro-
bated on the petition of Rambusch, on the 25th of June,
1889, and Rambusch was appointed and qualified as execu-
tor.   He filed no inventory, and paid no claims against the
estate, and rendered no account of his administration.   The
estate seems to have consisted simply of the $3,500 note and
mortgage, and a small amount of household furniture.   The
defendant, *Hawkins*, lived at Watertown, Wisconsin, and

had previously had business transactions with Rambusch in the way of loaning money through him. On the 15th of March, 1890, Rambusch wrote *Hawkins*, apparently in pursuance of some previous letter or conversation, as follows: "On Tuesday next, an order will be made by the county judge in regard to the $2,000 loan, and I will then be ready for it, and will send you the papers. If you can make it $2,500, it will be just as well. The mortgage is for $3,000, and is a first mortgage on land worth $10,000." *Hawkins's* reply to this letter does not appear in evidence, but was apparently favorable; and on the 20th of the same month Rambusch wrote *Hawkins*, inclosing the note and mortgage in suit, as follows: "I inclose herewith note for $2,500, and mortgage and note of George A. Hams to Lucinda Cutler, an assignment from me, as executor of the will of Lucinda Cutler, deceased, to you, as collateral security. The land is worth $10,000, so that the mortgage is absolute security. Please deposit $2,000 in Bank of Watertown to my credit, and the balance, $500, can wait awhile, as that is mainly to pay expenses of administration, part of it coming to me." The $2,500 note inclosed was payable three years from date, with interest at six per cent., and recited that it was secured by assignment as collateral of the Hams note and mortgage, and was signed, "William T. Rambusch, Executor of the Last Will and Testament of Lucinda Cutler, Deceased." It appears that, on the following day, *Hawkins* deposited $2,000 in the Bank of Watertown, to the credit of Rambusch, as requested in the letter, and that, between that time and the 9th of April, Rambusch collected interest on various loans belonging to *Hawkins*, amounting to $472.50, and by letter requested *Hawkins* to place $27.50 to his credit in the Watertown Bank, and allow him (Rambusch) to retain the $472.50 interest collected, and thus balance up the remaining $500 of the loan. This was done, and Rambusch subsequently drew out on his personal

checks the whole sum of $2,027.50 so deposited to his credit Rambusch disappeared in the fall of 1896, and died October 20, 1896, never having accounted to the estate.

The circuit court found that the money borrowed of *Hawkins* was borrowed by Rambusch for his own personal use, and that *Hawkins* knew that fact, and that no part of it was used for the benefit of the estate, and concluded that the note and mortgage still belonged to the estate of Lucinda Cutler, and had been converted by the defendant to his own use, and rendered judgment against *Hawkins* for the value thereof, with costs. Proper exceptions were taken to the findings, and the defendant appeals.

*Harlow Pease*, for the appellant.

For the respondent there was a brief by *Sawyer & Sawyer*, counsel, and *Malone & Bachhuber*, attorneys, and oral argument by *H. W. Sawyer* and *E. W. Sawyer*. They argued, among other things, that the note given by the executor was his individual liability, though he added to his signature the words " executor of," etc. He could not bind the estate by any new contract. *McLaughlin v. Winner*, 63 Wis. 120; *Miller v. Tracy*, 86 Wis. 330; *Thomas v. Moore*, 52 Ohio St. 201; *Roscoe v. McDonald*, 91 Mich. 270; *Ferrin v. Myrick*, 41 N. Y. 315; Croswell, Ex'rs (Hornbook), 260; *Rose v. Bowler*, 1 H. Bl. 108; *Powell v. Graham*, 7 Taunt. 585; *Ashby v. Ashby*, 7 Barn. & C. 444; *Wigley v. Ashton*, 3 Barn. & Ald. 101; *Corner v. Shew*, 3 Mees. & W. 350. The defendant is presumed to know the law, and knew that the executor was not proceeding regularly in the settlement of the estate. By depositing the money in bank to the executor's personal credit, he actually misappropriated it. *Williams v. Williams*, 55 Wis. 300; *Booth v. Wilkinson*, 78 Wis. 652; *O'Connor v. Decker*, 95 Wis. 202; *Black v. Hurlbut*, 73 Wis. 126; *School Dist. v. First Nat. Bank*, 102 Mass. 174; *Wren v. Kirton*, 11 Ves. 377; *Rocke v. Hart*, 11 Ves. 58; *Matthews v. Brise*, 6 Beav. 239; *Comm. v. McAlister*, 28 Pa. St. 480; *McAllister*

*v. Comm.* 30 Pa. St. 536. Such a deposit of trust funds to the executor's individual credit was, in law, an appropriation to his own use.

WINSLOW, J. We have been unable to find any evidence in the record to support the finding of the court to the effect that the defendant, *Hawkins*, knew that Rambusch borrowed the $2,500 for his own personal use and not for the purposes of the estate. On the contrary, it appears very clearly that Rambusch represented to *Hawkins*, in effect, that the money was borrowed for the purposes of the estate, and also that Rambusch was a man respected and trusted in the community, and that there were no facts appearing which would have put a reasonable man upon inquiry, or raise a suspicion that Rambusch expected to make any improper use of the money borrowed. Under these circumstances, the law is quite well settled to the effect that the pledge was valid. The principle is well expressed in the case of *Smith v. Ayer,* 101 U. S. 320–326, thus: "There is no doubt that, unless restricted by statute, an executor can dispose of the personal assets of his testator by sale or pledge for all purposes connected with the discharge of his duties under the will; and even where the sale or pledge is made for other purposes of which the purchaser or pledgee has no knowledge or notice, but takes the property in good faith, the transaction will be sustained, for the purchaser or pledgee is not bound to see to the disposition of the proceeds received. But the case is otherwise where the purchaser or pledgee has knowledge of the perversion of the property to other purposes than those of the estate, or the intended perversion of the proceeds." See, also, Schouler, Ex'rs, §§ 349, 350; *Gottberg v. U. S. Nat. Bank,* 131 N. Y. 595. The powers of an executor with regard to the sale or pledge of assets are much broader than those of a trustee, because the executor takes title to the personal property and is presumed to have the

right to transfer. Schouler, Ex'rs, § 350. It does not necessarily follow from the fact that the pledge was valid that the estate is liable for the loan, nor is that point decide'd in this case.

It is claimed that $472.50 of the $2,500 debt from Rambusch to *Hawkins* was not advanced by *Hawkins*, but consisted of a past-due debt owing by Rambusch to *Hawkins*, for interest money collected, and hence that, so far as this sum is concerned, Rambusch pledged the assets of the estate to pay his own debt, which he could not legally do. *Weir v. Mosher*, 19 Wis. 311. There is, however, no evidence showing affirmatively that this $472.50 was in Rambusch's hands when he negotiated the loan of *Hawkins;* but the evidence rather tends to show that the interest moneys were collected after the loan was negotiated, and when *Hawkins* really owed Rambusch $500 upon the loan, and that the interest moneys were simply set off against the money which *Hawkins* would otherwise have forwarded to Rambusch to complete the loan.

*By the Court.*— Judgment reversed, and action remanded with directions to render judgment dismissing the complaint.

BARDEEN, J., took no part.