# Schell, Appellant, *v.* Deperven.

*Executors and administrators—Pledging securities of estate—Embezzlement by executor—Trust and trustee.*

Testator specifically bequeathed certain stock in a corporation to his two executors as trustees. A, one of the executors, requested B, a woman, of whose affairs he had charge, to lend a certain sum of money to the estate saying that the estate needed the money, and he agreed to give to her as collateral security some of the stock bequeathed to the executors as trustees. B made the loan and was shown the certificates of stock. The box in which B kept her papers was in A's office. No assignment of the stock was made at the time. A was a man of good repute and B had no reason to distrust him. About three years afterwards, after B's marriage, A delivered to her husband a collateral note signed as executor, and the shares of stock above referred to, together with a warrant of attorney to transfer the same. B had no knowledge at the time she made the loan nor at the time the note was given that there was another executor, nor did the co-executor know anything of the transaction. A did not apply the money borrowed to the use of the estate, and subsequently disappeared. *Held*, that B was entitled to retain the stock as against the estate until the loan was paid.

Argued Jan. 11, 1901. Appeal, No. 241, Jan. T., 1900, by plaintiff, from decree of C. P. No. 4, Phila. Co., June T., 1899, No. 231, on bill in equity in case of Frederick H. Schell, Executor of Joseph E. Schell, Deceased, v. John H. Deperven, Executor of Henry Deperven, Deceased, Clyde E. Barton and Elizabeth S. M. Barton. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity for an account.

The court entered a decree in favor of Clyde E. Barton and Elizabeth S. M. Barton.

*Error assigned* was the decree of the court.

*Frank P. Prichard*, with him *Edmund G. Hamersley*, for appellant.—An executor has no authority to borrow money or to make contracts for the estate. If he does, the contract is his personal contract: Croswell on Exrs. & Admrs. sec. 111; Grier v. Huston, 8 S. & R. 402; Beeson v. McNabb, 2 Pa. 422; Bogle v. Krietzer, 46 Pa. 465; Williamson's App., 94 Pa. 231.

The transfer was by one executor alone and by way of pledge and not sale: Ellis's App., 8 W. N. C. 538.

A purchaser from an executor of property standing in the name of decedent takes with notice of all the contents of the will: Keane v. Robarts, 4 Madd. Ch. 190; Lowry v. Commercial, etc., Bank, Taney C. C. Decisions, 310.

The transfer was made five years or more after the death, when presumably the estate had been settled up and this property had passed into the hands of the executors as joint trustees under the will: Lowry v. Commercial, etc., Bank, Taney C. C. Decisions, 310; Livezey v. Northern Pacific R. R. Co., 157 Pa. 75; Walker v. Smalwood, Ambler, 676; Dovey's App., 97 Pa. 153.

*Samuel P. Tull,* with him *Dilworth P. Hibberd,* for appellee.—Executors and administrators have authority, unless restricted by statute, to mortgage or pledge the personal property of their decedents for the purpose of raising money or securing debts; and this authority rests on the same principles, is governed by the same rules, and is subject to the same limitations in general as apply to sales: Vane v. Rigden, L. R. 5 Chan. App. Cases, 663; Smith v. Ayer, 101 U. S. 320; Carter v. Mfg. Nat. Bank, 71 Me. 448; Gottberg v. United States Bank, 26 Abb. N. Cas. 50.

The fact that property has been specifically bequeathed does not necessarily prevent the sale or pledge of the property by an executor or administrator: Bayard v. Farmers' & Mechanics' Bank, 52 Pa. 232; Wood's App., 92 Pa. 379; Lowry v. Commercial, etc., Bank, Taney C. C. Decisions, 310; Livezey v. Northern Pacific R. R. Co., 157 Pa. 75.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1901:

Joseph E. Schell died October 6, 1889. He was the owner of thirty-four shares of the capital stock of the Fire Association of Philadelphia, which stood in his name on the books of the association at the time of his death. By his will he bequeathed to his executors in trust, one-eighth part of his residuary estate for the benefit of each of his four daughters, and he directed that the respective shares of two of his daughters should include eight shares of the capital stock of the Fire Association, and the respective shares of the other two daughters should include

nine shares of the said stock.   The executors were his son, Frederick H. Schell, and one Samuel S. Sibbs, a business man at that time of good standing and repute.   Early in September, 1891, Sibbs requested the defendant, Mrs. Elizabeth S. M. Barton, then Mrs. Elizabeth Stokes Morris, to loan him, as executor of Schell's estate, the sum of $1,500, saying that the estate needed the money, and agreed to give her as collateral security, stock of the Fire Association to an equal amount, which he showed her at that time.   Mrs. Barton was not aware that there was a coexecutor, nor did she know to what purposes Sibbs intended to apply the borrowed money.   She made the loan as requested, but no obligation was given nor stock transferred to her by a written assignment at that time.   Sibbs paid to her at regular intervals by his own personal check the interest on the loan. In the latter part of 1894, or early in 1895, Dr. Barton, the husband of Mrs. Elizabeth S. M. Barton, notified Sibbs, who had attended to some business for Mrs. Barton and had charge of her papers, that he would take charge of his wife's affairs ; and thereupon Sibbs delivered to him a collateral note, dated September 9, 1894, for $1,537.50, payable to her order, and signed by him as " executor, estate of Jos. E. Schell, dec'd." This note recited the fact that the maker had delivered six shares of the capital stock of the association as collateral security for the prompt payment at maturity, of his liability.   Accompanying the note was a power of attorney, dated September 9, 1894, executed by Sibbs as executor of Joseph E. Schell, deceased, constituting Mrs. Barton his attorney to sell, assign and transfer six shares of the capital stock of the Fire Association.   With the note was also delivered to Dr. Barton, for his wife, a certificate of twenty-three shares of the stock of the association, standing in the name of Joseph E. Schell.   The whole transaction was without the knowledge or consent of the coexecutor, and the money borrowed was not appropriated to the use of the estate of Joseph E. Schell.

In May, 1894, the executors filed their account, which was audited by the orphans' court, and an adjudication was filed October 27, 1894, by which the stock of the Fire Association was awarded to the executors as trustees under the provisions of the will.   Subsequently, in 1899, Sibbs defaulted and disappeared, and the facts of the loan and hypothecation of the stock

became known for the first time to his coexecutor. The latter then filed the present bill against the defendants, and John H. Deperven, executor of the will of Henry Deperven, deceased, praying that the defendants might make discovery as to the certificates for shares of stock of the association, delivered to them by Sibbs ; that they be restrained from negotiating or transferring the stock, and also be ordered to deliver the certificates in their hands to the complainant. An answer was filed by the defendants and by Deperven, and, after hearing, the court below entered a decree in favor of the defendants, holding that the complainant was entitled to the stock only upon repayment of the amount of the loan made by Mrs. Barton, with interest. From this decree the complainant appealed. A decree was entered against Deperven, from which he appealed, and which is considered and determined in an opinion filed herewith.

The learned counsel for the appellant frankly concede that one of several executors may transfer personal property of the decedent for value by way of sale or pledge, and that the transferee will take a good title thereto, unless he has knowledge, actual or constructive, of facts which put him on inquiry, as to whether the transaction is one made in course of the administration of the estate and for its benefit. As suggested, therefore, the single question here is, whether Mrs. Barton had either actual or constructive notice of facts which should have put her on inquiry, which would have resulted in a knowledge of the fraudulent conduct of Sibbs.

The very proper admission by counsel, which is fully justified by all the authorities, together with the uncontrovertible facts, make the question for determination here, a very narrow one. The facts as conceded by all parties, show conclusively that Mrs. Barton had no actual knowledge of any intended fraud on the part of Sibbs at any time during the entire transaction. She acted in the utmost good faith, and loaned the money to him in his representative capacity, on his allegation to her, in her language, "that he wanted money as executor of the Schell estate, and it would be an accommodation to him if I had it; if I couldn't give it, he would apply to someone else." This was less than two years after the death of the testator and while the estate was in course of administration. The good

reputation of Sibbs in the community, and her own intimate business relations with him, fully warranted her in believing his representations that the loan was for the benefit of the estate and that it would be so applied. There was, at the date of the loan, nothing whatever to discredit Sibbs or his business integrity with Mrs. Barton, or, as the evidence clearly discloses with any person in his community. No business man of the most exacting care, who knew him, would have hesitated one moment to have granted him the loan on the terms of the contract between him and Mrs. Barton. We therefore have Mrs. Barton's action in the premises in keeping with the most careful business methods and approved by the course pursued by intelligent and accurate business men.

It is contended, however, by the appellant that, while the transfer of the stock made by one executor only and by way of pledge and not sale was not sufficient in itself to put the transferee on inquiry, yet it was a fact that should have made her cautious, and made it more incumbent on her to be alert and heedful of other circumstances in the case. But, under the circumstances of this case, we do not see that these facts should arouse in Mrs. Barton even a suspicion of any intention of Sibbs to misappropriate the loan. She was not dealing with a stranger, but with a man whose business standing with her and in the community for many years, had taught her to rely implicitly on his word. She was fully authorized to rest upon that in determining the verity of his assertion that he needed the funds for the use of the estate. Nor does the fact that he made the transfer of the stock as sole executor authorize the inference of bad faith. It is conceded that Sibbs was the active executor and that Mrs. Barton did not know that he had a coexecutor. It cannot be seriously contended that under these circumstances, Sibbs could not have sold the stock and passed a good title. If that be true, he, as sole executor, could pledge it, and invest the pledgee with a complete title. The authority to pledge the personal property of the decedent for the purpose of raising money or securing debts rests on the same principle, is governed by the same rules and is subject to the same limitations as apply to sales : 11 Am. & Eng. Ency. of Law (2d ed.), 1031. The facts in the case of Ellis's Appeal, 8 W. N. C. 538, relied upon by the appellant, show that it does not support his

contention. There the executor, in fraud of his trust, transferred stock as collateral security for a debt of his own, to one who had notice of the fact that the stock was the property of the estate of the borrower's testator, and actual knowledge of the fact that there were other executors who did not join in the transfer. Here, as we have seen, Mrs. Barton did not know that Sibbs intended to apply the money to his own use, but had a right to presume the contrary, and was ignorant of the fact that he had a coexecutor. The case is clearly distinguishable on its facts from the case at bar.

The fact that the property was specifically bequeathed to the executors as trustees, as claimed by the appellant, does not impose upon the purchaser or pledgee any greater duty to inquire into the necessity of the sale or pledge than if it were merely an asset of the estate not so bequeathed. As suggested by the learned judge of the court below, such specific bequests would necessarily be subject to the necessity of a sale for the payment of debts, and in such case the purchaser or pledgee need not inquire into the necessity of the sale or pledge.

It is further contended on the part of the appellant that Mrs. Barton acquired no title to the stock as against the estate until the delivery of the note and accompanying papers to her husband in the latter part of 1894 or in the early part of 1895. We think this position ignores the facts in the case. The loan was made in 1891, and at that time and in consideration thereof, Sibbs promised an equivalent amount of Fire Association stock as collateral, and then and there showed to Mrs. Barton the stock which was to be held as collateral. This was in Sibbs's office which had been the office of Mrs. Barton's former husband, Joshua H. Morris, and in which all her papers were kept in a box, in charge of Sibbs. As she demanded the security before she made the loan, and in response thereto he showed her the stock, it is fair to presume, under the circumstances stated, that, during the time which elapsed between the date of the loan and the delivery of the securities to Dr. Barton, they were in Mrs. Barton's box which was in the control of Sibbs as her representative. While this would not be sufficient to transfer the title to the stock, yet it is a fact worthy of consideration in determining the equities of the case and the intention of both parties as to the delivery of the securities. The loan

was unquestionably made on the faith of the stock which was shown Mrs. Barton at the time, under such circumstances as to lead her to believe that it was a delivery to her, and it was so considered by both parties. Having the authority to make the pledge, and a full consideration therefor having been paid to the representative of the estate, the failure to make the formal transfer of the securities until September, 1894, should not be permitted to deprive Mrs. Barton of her just and equitable claim to the stock. We therefore agree with the learned judge of the court below that, so far as Mrs. Barton's rights are concerned, "the power of attorney must be regarded as having been made at the time when she loaned the money upon the faith of the security which the letter of attorney gave to her. That was the time when it was promised to her, and in equity she ought to be regarded as having acquired it at that time."

The view we take of the case renders it unnecessary to consider the effect on Mrs. Barton's title to the stock of the proceedings in the orphans' court on the account filed by the executors.

It follows that the court below was right in holding that Mrs. Barton was entitled to retain the six shares of stock until she was paid the amount of the loan made by her to Samuel S. Sibbs as executor of the estate of Joseph E. Schell, deceased.

The assignments of error are overruled and the decree is affirmed.