EDWARD A. FREEMAN, ADMINISTRATOR, *vs.* THE BRIS-
TOL SAVINGS BANK.

First Judicial District, Hartford, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

By his will *W* left to a trustee about $400,000 worth of personal prop-
erty, including stocks, bonds, notes, book-accounts, farming uten-
sils, cattle and horses, the net income of which was to be paid to
the testator's son, *J*, with a direction that in " so far as practi-
cable " the trustee should allow *J* to have " the management and
possession " of the trust estate, and should be exempt from any
liability on account of loss sustained while such estate, or any part
of it, was so " managed, controlled, or in the possession " of *J*,
" or for any loss by investment or reinvestment " by the trustee.
At *J*'s death legacies to the testator's grandchildren were to be
paid from the trust estate, if it was sufficient, and if not, from real
estate of which *J* was given the life use.  Certificates of stock
were turned over by the trustee to *J*, who pledged some of them
to the defendant bank to secure loans made by it to him.  *J* stated
to the bank that he intended to use the money—and he did in fact
use it or a large part of it—to pay for subscriptions to the in-
creased capital stock of a manufacturing company named after
*W* and in which *W*'s estate was largely interested.  The stock thus
subscribed for was issued to *J*, who turned over 2,200 shares of it to
the trustee, and he in turn transferred it, after *J*'s death, to the
plaintiff as executor on *W*'s estate.  In his account in the Pro-
bate Court, the trustee credited himself with securities turned
over to *J* " for reinvestment," and charged himself with the 2,200
shares of the manufacturing company's stock.  The bank, after
*J*'s death, offered to surrender the stocks pledged to it, if the
plaintiff would pay what remained due upon *J*'s notes; but the
plaintiff refused to do this and sued the defendant for a conversion
of the stocks.  *Held :*—

1. That the provision respecting *J*'s management and possession was
   not limited to the live stock, farming utensils and other tangible
   property, but applied to every part of the trust estate.
2. That the trustee was authorized not only to turn over the shares of
   stock in dispute to *J* to manage, but also for sale and reinvestment
   in such manner as the trustee in his " best judgment and discre-
   tion " might approve; and for that purpose might make *J* the
   agent of the estate.
3. That the fact that the bank was not in privity with those through
   whom the plaintiff acquired the manufacturing company stock,

Freeman *v.* Bristol Savings Bank.

was immaterial, inasmuch as the defense set forth in the answer did not rest upon contract relations, but upon acts creating rights of property which could only be divested through judicial action on equitable terms.

4. That whether the pledges made by *J* to the bank were valid in all respects or not, the plaintiff could not equitably retain the 2,200 shares of the manufacturing company stock, which resulted from the bank's loans to *J*, and at the same time, while refusing to pay the balance still due thereon, force the bank to respond for the value of the stocks which *J* had pledged to it to secure such loans.

5. That the statements made by *J* to the bank, of his intended use of the borrowed money, were properly received, as well as evidence that the bank knew that *W*'s estate was largely interested in said manufacturing company and loaned the money in the belief that it was to be used for the purpose stated by *J*.

A testamentary power of sale, standing alone and unaided by other provisions in the will, does not authorize a mortgage or pledge.

Argued October 13th—decided December 18th, 1903.

SUIT by an administrator with the will annexed, of the estate of Elisha N. Welch, for a conversion of certain shares of stock belonging to the estate, brought to the Superior Court in Hartford County where a demurrer to the answer was overruled (*Roraback, J.*) and the case tried on the merits to the court, *Shumway, J.*; facts found and judgment for the defendant. *No error.*

The testator, who belonged in Bristol and died in 1887, left three children, two daughters and one son. He owned a large amount of stock in the E. N. Welch Manufacturing Company, of Bristol, a corporation which was named after him. His son, James H. Welch, was also a stockholder in it. In the original will it was provided that enough more stock in the company should be distributed to the son, to give him, with his own shares, a controlling interest.

By the fifth codicil to the will, revoking a prior absolute gift of a third of his residuary estate to his son, James H. Welch, there was devised to him a life estate in any real estate that might form part of said third; and "all the stocks, bonds, notes, book accounts, farming utensils, and cattle or horses, and all other personal estate of any kind and nature wherever situated, and all interests therein which by the

terms and conditions of said original will was given or bequeathed to said James H. Welch, or which would, except for his codicil, pass or be distributed to him under said will," were bequeathed to the testator's brother, in trust, " to manage, hold, sell, invest, and reinvest the same and all accumulations thereof upon his best judgment and discretion, and from the rents, uses, and income of the same for and during the life of said James H. Welch to pay over to him for the personal use and support of himself and children annually all of said rents, uses and income from said personal estate received or collected by said trustee after deducting the expenses of managing said estate and doing the business necessary to carry out the conditions of said trust." A subsequent clause contained this provision : " I direct that my said trustee shall, as far as practicable, allow my son, said James H. Welch, to have the management and possession of said personal estate held in trust, and I hereby provide and direct that the said trustee shall not in any way or to any amount be held responsible to any person or by any tribunal for any damage or loss that may be sustained to any part of said trust estate while said estate is managed, controlled, or in the possession of my said son James H. Welch, or for any loss by investment or reinvestment by said trustee."   On the decease of James H. Welch, legacies of $25,000 apiece were given to the testator's grandchildren other than Alex Stanley, " to be taken from this trust estate if there be sufficient amount remaining in the hands of my said trustee at that time ; but should there not be a sufficient amount of these trust funds at that time to make each of said grandchildren (other than said Alex Stanley) living at this time equal to the amount given in said original will to said Alex Stanley then, in such case, I hereby give, devise, and bequeath to each of said grandchildren now living other than said Alex Stanley from the real estate the use of which is herein given to my said son James H. Welch during his life a sufficient quantity of said real estate in amount to make each of them equal to the amount given said Alex Stanley in said original will including the amount

received from the said trust estate." Then followed these provisions : " At the death of my said son James H. Welch, and after all the provisions in this codicil in relation to the grandchildren herein provided for have been fully complied with and carried out, then I direct that all the real estate, the use of which is herein given to my son James H. Welch, and all the personal estate held in trust by the provisions of this codicil which may remain after paying all the expenses for settling the trust estate and the management of the same, and all bequests and legacies to the grandchildren, shall become a part of the residuum of my estate, to be disposed of as hereinafter specified. . . . In case of the resignation or death of my said trustee I hereby direct that another trustee be appointed by the Probate Court for the district of Bristol, and if practicable such an one as may be recommended by my trustee herein named. And I give to the said trustee or trustees so appointed as successor or successors to my original trustee the same rights and powers in regard to said trust estate and the property belonging thereto as are given to the original trustee in this codicil and direct that said successor or successors shall not be required to give any probate bond for the faithful performance of his duties as trustee neither shall he or they be held responsible to any person or by any tribunal for any loss or damage sustained by said trust estate (while acting in good faith) which may be sustained by reason of any investment or reinvestment of the property not proving successful nor for any loss or damage to the estate while the property is in the possession or control of my said son James H. Welch."

The residuum of the testator's estate was given to his two daughters, after payment of a legacy therefrom of $40,000 to his nephew, George W. Mitchell.

James H. Welch had two sons at the date of the codicil.

The testator's brother renounced the trust, and George W. Mitchell was appointed to execute it, and received personal estate amounting to about $400,000 in value. In this was included live-stock and farming implements of the value of $3,564, on a farm devised to James H. Welch for life,

which stock and implements were put and remained in his possession.  In 1893 the E. N. Welch Manufacturing Company became financially embarrassed.  James H. Welch and his two sisters each were shareholders, and signed an agreement reciting that James H. Welch desired to pledge to the Bristol National Bank certain insurance stocks then held by George W. Mitchell as trustee for him under their father's will, as collateral for a line of discounts to be granted on the company's notes to the amount of $45,000 ; requesting said trustee to pledge them for that purpose ; and agreeing to indemnify him against any loss from so doing.

Subsequently the company was reorganized, and the capital stock, which had been $100,000 at the testator's death, was increased by the addition of $100,000 of common stock and $100,000 of preferred stock.  James H. Welch agreed to the issue of the latter and to become a subscriber to it to the amount of $92,250, on condition that he should be given the sole control of the company and made its president.  To assist in providing means for paying for this preferred stock, he borrowed $48,000 from time to time in 1900, 1901 and 1902, on his own notes from the defendant bank ; giving it, as collateral, certificates for shares in sundry corporations in the name of George W. Mitchell, trustee, with blank powers of attorney indorsed on each signed by said trustee, who had delivered them to him in that condition.  The defendant made the loans in good faith for the purposes above stated, knowing the terms of the will and codicils, and believing that they authorized the trustee to deliver said certificates to James H. Welch to be so used.  A large part of the $48,000 was used by James H. Welch for said purpose ; and $10,000 of it was used to pay a subscription he had also made to the common stock of the E. N. Welch Manufacturing Company.  In the trustee's account rendered to the Court of Probate in 1903, he credited himself with a large amount of the trust stocks as having been from time to time " turned over to James H. Welch for reinvestment."  Among the stocks so entered were those so pledged to the defendant, the last entry of

turning over such stocks being a credit of $17,168, under date of January 20th, 1902. The last of said notes given by James H. Welch to the bank was for $10,000, dated January 17th, 1902. Said trustee's account charged the trustee, under date of August 25th, 1900, with " 202 shares E. N. Welch Mfg. Co. common stock, returned by James H. Welch, $5,050," and under date of January 20th, 1902, with "2000 shares E. N. Welch Mfg. Co. preferred stock returned by James H. Welch, $50,000." In fact, these shares (which were of the par value so stated), were all transferred to the trustee by James H. Welch on January 20th, 1902. Subsequently they were transferred by the trustee to the plaintiff, as part of the trust estate.

James H. Welch died on January 27th, 1902. Soon afterwards the stocks pledged by him to the defendant were transferred by it to its own name. Their value considerably exceeded its claim on its loans.

The residue of the stock in the E. N. Welch Manufacturing Company subscribed for by James H. Welch remains in his name.

*Theodore M. Maltbie,* for the appellant (plaintiff).

*Charles E. Perkins* and *Josiah H. Peck,* for the appellee (defendant).

BALDWIN, J. The trustee under the will of Elisha N. Welch was empowered to " manage, invest and reinvest " the trust property "upon his best judgment and discretion," and directed " as far as practicable " to allow James H. Welch " to have the management and possession " of it with an exemption of liability on account of any loss to any part of the estate occurring while it might be " managed, controlled, or in the possession of " James H. Welch, or by reinvestment. It is contended that the testator only intended to provide for putting his son in control of the animals and utensils upon his farm. The terms used are too broad to admit of such a construction. They apply equally to every part of the estate.

The trustee had therefore special testamentary authority to entrust the stocks in dispute to James H. Welch for management. He could also entrust them to him for sale and reinvestment in such manner as might be approved by his (the trustee's) "best judgment and discretion," and make him for that purpose the agent of the estate. In his account rendered to the Court of Probate, after the death of the latter, the trustee credits himself with them as delivered to him for reinvestment, and debits himself with other stocks received from him, including 2,000 shares of preferred stock and 202 shares of common stock in the E. N. Welch Manufacturing Company, to the value of $55,050. The facts found show that these stocks cost James H. Welch that amount, it being their par value, and that the loans by the defendant were made and largely used to assist in paying for them. Except from the account rendered to the Court of Probate, it does not appear that when the trustee delivered the stocks in controversy to James H. Welch, he authorized him to use them for purposes of reinvestment. The account, however, states that he received them for that purpose, and, with its debit entries, operates as a full ratification of what he did.

A testamentary power of sale, standing alone and unaided by other provisions in the will, does not authorize a mortgage or pledge. *O'Brien* v. *Flint*, 74 Conn. 502, 505. But by the will now under consideration not only was the trustee given the full title to the estate, and a large discretion as to its reinvestment, but he was directed to turn over the control of the whole property, so far as practicable to James H. Welch, without accountability for losses due to the latter's disposition of it. In determining what the provision means, the circumstances surrounding the testator when he made the will and codicil are to be taken into account. *Fritsche* v. *Fritsche*, 75 Conn. 285.

It is not improbable that he may have anticipated what afterwards happened to the manufacturing company which bore his name and in which a considerable portion of his property was invested. When the working capital of such a

concern is found inadequate, an issue of new shares is naturally thought of ; and, if issued, they must ordinarily be taken by those already interested in it.  By his original will he had provided for putting the control of the company in the hands of his son.  By the codicil, he enabled the trustee to furnish him means that he could use, if he thought proper, in supporting its credit or enlarging its business.  The language employed is entitled to a liberal construction to carry into effect the general intention of the testator, which is sufficiently manifest, to throw the power and responsibility of control upon the son as to whatever part of the estate the trustee might deem it reasonable and proper to turn over to his keeping.  It received such a construction from those interested in the residuary estate when they united, in 1893, with James H. Welch in requesting the trustee to pledge some of the stocks to procure discounts of the company's notes.  The other stocks, pledged later to the defendant, were made over to it under whatever authority the trustee could give, and also whatever power the will conferred upon the *cestui que trust.*  These pledges, whether properly or improperly made, resulted in the acquisition for the trust estate of two large blocks of the company's stock.  The plaintiff has received them as part of it.  He has, so far as appears, never offered to return them to the trustee, or to transfer them to the defendant, but holds them now as part of the testator's residuary estate.  If he can also force the defendant to respond for the value of the securities received in pledge, he will enjoy the fruits of the loans made upon them, without recompensing either borrower or lender.  The defendant has offered to surrender to him the stocks pledged, on his paying what is still due on the notes of James H. Welch, as security for which it received them.  He can ask, under the circumstances which have been stated, for nothing more.

The appellant contends that the bank can take no benefit from his acquisition of these stocks, for want of privity between it and those through whom they came to him, citing *Baxter* v. *Camp*, 71 Conn. 245, 249, 71 Amer. State Rep.

169. But while the complaint presents a simple cause of action at law, the answer, admitting all the averments to be true, sets up in avoidance the circumstances to which reference has been made. Such a defense does not rest on privity of contract, but on acts which, independently of any contract relations between the parties to this proceeding, have created rights of property which can only be divested through judicial action on equitable terms.

It is immaterial to the issues in this suit that the new shares in the E. N. Welch Manufacturing Company, now held by the plaintiff, were subscribed for by James H. Welch in his own name, in view of the fact that he transferred them to the trustee.

It is unnecessary to determine whether the pledges to the defendant were valid in all respects. They certainly gave it the means of acquiring the legal title to the stocks, which it holds. The plaintiff cannot treat the acquisition of it, or the refusal to transfer the stocks to him without payment of the loans to secure which they were pledged, as a conversion, while he is holding, as part of the testator's estate, other stocks procured with the money lent, and to pay for which the loans were sought and made.

Evidence that James H. Welch, when he applied for these loans, informed the defendant that he wanted the money to put into the E. N. Welch Manufacturing Company; that the defendant lent it believing it was to be so used in paying for preferred stock in it subscribed for by James H. Welch; that the estate of the testator was largely interested in the corporation; and that the defendant knew this, was all properly admitted. It was relevant to the issues raised upon the answer, and tended directly to support the defendant's lien upon the stocks pledged, by showing that, when it received them, it acted in good faith and with knowledge of facts which had a material bearing on the question of the right to make the pledge.

There is no error.

In this opinion the other judges concurred.