## MARY B. SAMELS AND OTHERS v. HARTFORD ACCIDENT & INDEMNITY COMPANY.[1]

May 8, 1925.

No. 24,610.

**Defense that property of estate was held in pledge by defendant as collateral security bad on demurrer.**

The demurrer was properly sustained to an answer which disclosed that the shares of stock demanded by plaintiffs as executors were owned by their decedent when he died but had come into defendant's hands subsequently through pledge agreements, executed by four of the six devisees individually, as collateral security for defendants executing a $100,000 bond protecting a bank in the liquidation of another bank which the former had bought. The pledging of the property of the estate for such purpose, cannot be considered other than a wrongful misappropriation thereof.

1. See Executors and Administrators, 24 C. J. p. 846, § 2137 (1926 Anno).

Action in the district court for Hennepin county to recover possession of certain stock or for its value. Plaintiffs' demurrer to the answer was sustained, Kolliner, J. Defendant appealed. Affirmed.

*Sexton, Mordaunt & Kennedy,* for appellant.

*Jesse Van Valkenburg,* for respondents.

HOLT, J.

A demurrer sustained to an answer presents the question of the

[1] Reported in 203 N. W. 620.

authority and power of executors to pledge the personal property of the estate, when it is made to appear that it was not so pledged in the ordinary course of the administration of the estate.

The main facts stated in the complaint are these: Frank A. Samels died testate in 1919. Plaintiffs are the sole surviving executors. Another executor who qualified was William A. Samels, but he died in June, 1923. When Frank A. Samels died he owned 333⅓ shares of the capital stock of Lake Street Investment Company and 160 shares of the Samels Bros. & White Canning Company, all of which came into the possession of the executors of his estate, but which now are wrongfully detained by defendant. The shares of stock are alleged to be of the value of $66,000, and recovery is demanded. The will provides that Mary Samels, the widow, is to have all of the net income during her life and as much of the corpus of the estate as may be necessary for her maintenance and comfort, and after her death the property is to be equally divided between five children, but the share of one child is to be held in trust for him by a trust company. The executors named or the survivors are also made trustees of the residuary estate, with power to sell and dispose of and reinvest both the real and personal estate.

The answer admits the allegations of the complaint except the wrongful detention of the stock, and avers that it received the same under the following circumstances: The executors, except the widow, on February 28, 1923, requested defendant to execute a bond in the sum of $100,000 on behalf of the Live Stock State Bank of South St. Paul, and in favor of the Drover's State Bank, of the same place, representing that the estate was vitally interested in the liquidation of said bank and that they had the right to pledge the stock mentioned; that the estate was the owner and holder of stock in said bank, and did have an interest in the liquidation thereof; that the exact amount of stock owned and held by the estate was unknown to the defendant at the time, but it is now informed that the par value was $1,000; that thereupon, and as an inducement to execute the bond, plaintiffs delivered the stock certificates indorsed as collateral security to the bond (copies of such certificates with indorsements are set out with the collateral agreements); that the

bond was given by defendant; that the Live Stock Bank became obligated for a deficit to the Drover's Bank in said liquidation in a sum of over $200,000; that defendant had to pay the full penalty of the bond to-wit: $100,000, to the Drover's Bank on April 9, 1924; and that under the collateral agreement defendant has the right to apply the shares pledged upon the loss sustained on the bond, which is alleged to be $102,600.

The two agreements pledging the shares of stock are set out. Neither purports to be the contract of the executors or for the benefit of the estate, but are the individual obligations of J. P. Samels, F. W. Samels, W. A. Samels and G. E. Samels. The one pledges 333⅓ shares of the Lake Street Improvement Company, and the other 160 shares of The Samels Bros. & White Canning Company. The pledgors do not only pledge to secure the $100,000 bond mentioned, but to secure any other bond that defendant might thereafter give at the request of said pledgors, also for the premiums on this and such other bonds. It further appears that the 333⅓ shares of the improvement company standing in the name of the deceased were delivered to defendant and purport to be assigned in blank by said four sons as individuals and not officially. Of the 160 shares in the Canning Company standing in the name of the deceased, and delivered to defendant, 40 shares were assigned in blank by the executors, 92 shares were assigned by "Estate of F. A. Samels, dec. by F. W. Samels," and 28 shares by "Estate of F. A. Samels, G. E. Samels, executor."

Notwithstanding the allegation that the executors informed defendant that the estate was vitally interested in the liquidation of the Live Stock Bank, the documents executed and accepted by defendant show clearly that the pledging was not done by or in behalf of the estate, but by four of the sons of the deceased as individuals. The instruments also show the property pledged not to belong to the pledgors individually, but to the estate of Frank A. Samels. Furthermore, it is clear that the attempted pledging was not a transaction that might ordinarily take place or be required in the administration of an estate. No money was raised by the pledge to be used for the benefit of the estate. On the contrary, it was

hazarding a large and valuable portion of the estate on the uncertain outcome of a business venture between two banks. This was such an extraordinary matter that defendant was not justified in resting on the assurance of the executors that the estate was vitally interested, for by the slightest effort defendant could have ascertained what it now admits it knows, namely, that the estate was interested only to the extent of $1,000 worth of shares owned in the Live Stock Bank. The pledging agreements were not those of the executors in behalf of the estate, but of the four individual signers, and, even though a few shares of the stock were assigned by the executors, it must be said that on the face of the whole transaction, as admitted and set forth in the answer, to defendant's knowledge it received the shares of stock belonging to an estate wrongfully and not for any legitimate purpose in the administration of the estate. As said in the much cited case of Smith v. Ayer, 101 U. S. 320, 326, 25 L. ed. 955:

"There is no doubt that, unless restrained by statute, an executor can dispose of the personal assets of his testator by sale or pledge, for all purposes connected with the discharge of his duties under the will. And even where the sale or pledge is made for other purposes, of which the purchaser or pledgee has no knowledge or notice, but takes the property in good faith, the transaction will be sustained; for the purchaser or pledgee is not bound to see to the disposition of the proceeds received. But the case is otherwise where the purchaser or pledgee has knowledge of the perversion of the property to other purposes than those of the estate, or the intended perversion of the proceeds. The executor, though holding the title to the personal assets, is not the absolute owner of them. They are not liable for his debts, nor can he dispose of them by will. He holds them in trust to pay the debts of the deceased, and then to discharge his legacies; and, as in all other cases of trust, he is personally responsible for any breach of duty. And property thus held, acquired from him by third parties with knowledge of his trust and his disregard of its obligations, can be followed and recovered. The law exacts the most perfect good faith from all parties dealing with a trustee respecting trust property. Whoever takes it for

an object other than the general purposes of the trust, or such as may reasonably be supposed to be within its scope, must look to the authority of the trustee, or he will act at his peril."

While it is true that the executor takes title to the personal property not specifically bequeathed, such title is nevertheless a qualified one for the purpose of administration only. Vail v. Anderson, 61 Minn. 552, 64 N. W. 47; Granger v. Harriman, 89 Minn. 303, 94 N. W. 869. The executors in this case held the personal property in question for the purpose in the first place of paying taxes and discharging the expenses of administration, secondly for the payment of debts, and thirdly for the beneficiaries under the will. It is self evident that pledging the same for the purpose disclosed by the answer was a misappropriation, if attempted by the executors, which defendant could not avoid knowing. Again, defendant cannot plead ignorance of the fact that the shares belonged to an estate in the course of administration, for the manner in which title was attempted to be passed as to some of them disclosed that Frank A. Samels, to whom they were issued, was dead and that there were at least four executors of his estate, therefore, defendant must be charged with notice that the pledge agreements made with individuals were a nullity, so far as concerns the right of the executors to claim them for the purpose of administration.

The facts admitted by the answer readily distinguish this case from those cited by appellant such as Freeman v. Bristol Sav. Bank, 76 Conn. 212, 56 Atl. 527, where the will authorized the disposition made of the shares; Lyman v. National Bank, 181 Mass. 437, 63 N. E. 923; Carter v. National Bank, 71 Me. 448, 36 Am. Rep. 338; Schell v. Deperven, 198 Pa. St. 600, 48 Atl. 813, 82 Am. St. 820; Hemmy v. Hawkins, 102 Wis. 56, 78 N. W. 177, 72 Am. St. 863.

It is not necessary to consider the proposition whether a valid pledge can be made by one of several executors for the conclusion reached, that the attempted pledge was a misappropriation of the estate to defendant's knowledge, disposes of the appeal.

The order is affirmed.