## IN RE ESTATE OF WALTER BUTLER.
## WALTER P. BUTLER v. BUILDERS TRUST COMPANY.[1]

March 31, 1939.

No. 31,922.

[1]Reported in 284 N. W. 889.

*Edgerton, Green & Edgerton,* for appellant.
*Oscar Hallam,* for respondent.

JULIUS J. OLSON, JUSTICE.

Walter Butler, a resident of Ramsey county, died intestate October 28, 1933, possessed of a large estate. He was survived by his widow, two sons (Walter P., appellant here being one of them), and a daughter. Builders Trust Company, the respondent, a Butler family corporation, was appointed administrator and is still acting in that capacity.

On June 7, 1934, appellant entered into an agreement, as party of the first part, with the other heirs, as parties of the second part, and the trust company, as party of the third part, under the terms of which he agreed—

"to sell all of his stock in Builders Trust Company, including stock to be received from the estate of Walter Butler, deceased, amounting to 1067-7/9 shares all told, for the price of $129.80 per share, in all $138,597.56, to be paid in cash on delivery of duly assigned certificate of said stock as now held by first party and a duly executed assignment of the stock to be received by first party from the estate of Walter Butler, deceased. * * * Second parties agree to purchase said stock and to pay therefor the price above mentioned. * * *

"This contract shall be closed by payment of the amount above described and delivery of the documents to be delivered by first party on or before the 8th day of June, 1934."

Of the shares so to be transferred 810 thereof then belonged to appellant in his individual capacity. The remaining 257-7/9 shares represented his two-ninths interest in 1,160 shares owned by his father at the time of the latter's death. The deal was duly consummated on June 8, and the shares contracted to be sold were duly

assigned by appellant and the purchase money was paid in cash, $138,597.56, by the other Butler heirs. By the assignment the purchasers were given—

"All of my right, title and interest in and to any and all stock in Builders Trust Company owned by Walter Butler at the time of his death, and I do irrevocably authorize Builders Trust Company as Administrator of the Estate of Walter Butler, deceased, to Assign and Transfer all certificates evidencing said stock to" the named purchasers and "to transfer said stock on the books of the Builders Trust Company, and do authorize said Builders Trust Company to make such transfer."

Thereafter dividends were received by the trust company in its representative capacity amounting to more than $31,000. Instead of paying the dividends applicable to assigned shares to the assignor, Walter P. Butler, it paid all thereof to the assignees, being of the view that it was its duty so to do under the mentioned agreement. On March 12, 1937, pursuant to petition for decree of partial distribution (a prior decree of such distribution of securities in the amount of $240,000 had been made on July 31, 1934), an order was made by the probate court under the terms of which such further distribution was directed, consisting of cash, $126,000, and the 1,160 shares of stock in the trust company. With its petition the trust company also submitted its administration account. Therein it claimed credit for the item of dividends received and paid to the other heirs (assignees) subsequent to the time of the mentioned sale. Appellant does not complain in respect to the shares individually owned and by him transferred but takes the position that the dividends on the 257-7/9 shares that came to him as an heir should go into decedent's general estate; hence that the court in allowing the payment of these sums to the assignees as credits in its administrator's account was in error. When this matter was heard by the probate court appellant, although represented by counsel (but not by those now appearing for him), made no objection to these payments, at least we can find none in the record. And there was testimony introduced by respondent at

the trial in district court, not disputed, that such was the fact. After trial had in the district court findings were made and judgment ordered sustaining in all things the order of the probate court. Judgment was thereupon entered, and this appeal was taken.

In his brief appellant says that—

"the propositions relied upon charged error on the part of the probate court * * * in settling and allowing the account * * * insofar as it allowed the administrator credit for certain disbursements of funds, which had been received by it as dividends upon stock held in its name as administrator to heirs other than appellant." He admits, however, that "appellant has no quarrel with certain general propositions which were relied upon by counsel for the respondent in the court below, to-wit: That an heir may make a valid assignment of his interest in an estate; that dividends declared subsequent to a change of ownership of stock belong to the transferee of the stock, and that ordinarily where a binding agreement is made for the sale of stock, the purchaser is entitled in equity to a dividend declared between the time of making the agreement to sell and the delivery of the certificate."

We may concede appellant's claim to the effect that the representative of an estate, upon his appointment and qualification, becomes vested, "for the purpose of administration, with the title and right to immediate possession" of all personal property belonging to decedent's estate. In re Estate of Bergman, 182 Minn. 128, 131, 233 N. W. 806. Also, that personal property of a decedent which passes to the administrator pending administration includes earnings, income, increase, accretions, and accessions of or to such property. Globe Indemnity Co. v. Bruce (10 Cir.) 81 F. (2d) 143; 2 Woerner, Am. Law of Adm. (3 ed.) p. 983. But it must be remembered that the title so vested in the representative is a qualified one and is limited to the purposes of the administration only. Subject to this right of possession and qualified title, the property descends to the heirs. Granger v. Harriman, 89 Minn. 303, 94 N. W. 869; Samels v. Hartford Acc. & Ind. Co. 163 Minn. 209, 203 N. W. 620.

■  A decree of distribution is not the source of title.  It simply declares what the law has ordained.  "It determines merely to whom, and upon what conditions, the property passes, and does not recognize or affect transfers or conveyances of the property made by heirs or devisees." 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3660.  The decree of the probate court does not avoid or nullify an agreement made amongst the heirs.  All the court does is to adjudicate "upon the devolution of property under the laws of descent and the right of inheritance thereof as of the date of the death of the prior owner."  And, "in the absence of fraud, undue influence or mistake, releases between coheirs of their rights in real or personal property, and agreements entered into between them for a division of the estate, are valid and will be enforced."  (Citing cases.)  Barnes v. Verry, 174 Minn. 173, 177, 178, 218 N. W. 551.

■  We have in this case no question involving rights or claims of creditors nor any conflict amongst the heirs themselves.  Appellant's assignment of his interest in his father's stock was included in and made a part of the general assignment which included also appellant's individually owned shares.  He authorized and directed the administrator "to assign and transfer all certificates" to the assignees, the other heirs of decedent, and directed it "to transfer said stock on the books of" the company, and "to make such transfer."  If the administrator had proceeded promptly to procure the decree of partial distribution here for review, and if such decree had issued before the dividends were declared and paid, surely appellant would not now contend that either he or the estate would have any interest therein.  The rights of the parties under the agreement made and executed by them should not be interfered with by the delay, there being no suggestion of harm to anyone because thereof.  But we find that the court in making the decree carefully provided that the transfer of the 1,160 shares to the heirs should be "without prejudice  *  *  *  to any lawful transfer of said property or money or any part thereof by said persons or any of them" theretofore made.  This being so, we would be but quibbling were we now to say that the contract amongst the heirs, fairly made and fully executed by them (absent, as here, any ob-

jection on the part of the administrator, but instead full acquiescence, no creditors' rights being involved, and the estate being amply adequate to make possible the consummation of their deal), is to be heard and determined by another court. "As far as appears, no statutory or other law will be violated by permitting the probate court's order to stand." In re Estate of Browning, 189 Minn. 375, 381, 249 N. W. 573, 575. No other result than the one reached by the courts below is ultimately possible. "We should not sacrifice rights upon the altar of mere formalism, nor should rules of procedure be so used as to thwart or destroy the accomplishment of justice." Olson v. Myrland, 195 Minn. 626, 633, 264 N. W. 129, 133.

That the right result was reached by both the probate and district courts is clear. Therefore the judgment should be, and it is, affirmed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.