Hart *v.* Hart.

———•◆•———

WILLIAM F. HART *vs.* OLIVER D. HART AND OTHERS.

A contract was signed by all the heirs of an intestate, by which they agreed that the estate should be settled in the probate court according to a draft of a will prepared by the intestate but never signed. One of the heirs who was weak-minded and ignorant of his rights, was unduly influenced by the others, in whom he reposed special confidence, to sign the agreement, and thereby relinquished a much larger interest than he received. Upon a bill in equity brought by him to the Superior Court to set aside the agreement and for an injunction against the proceedings in the court of probate under it, in which it was claimed by the respondents that the probate court alone had jurisdiction of the matter, it was held that the Superior Court had jurisdiction.

BILL IN EQUITY, to set aside a contract and for an injunction against certain proceedings in the settlement of an estate; brought to the Superior Court in Hartford County, and heard before *Sanford, J.* The court found the following facts:

The petitioner is a nephew and heir-at-law of Charles W. Hart, late of New Britain. In January, 1876, Charles W. Hart died, leaving two brothers, Oliver D. Hart and George A. Hart, and two sisters, Antoinette H. Booth, wife of George Booth, and Jane M. Nott, wife of Jonathan Nott, all of New Britain, which brothers and sisters and the petitioner, (who is a son of a deceased brother of the said Charles,) are his only heirs-at-law. Shortly before his decease a draft of a will was made under his direction, by which he distributed his estate among the heirs at law above named, giving to the petitioner the interest of one thousand dollars during his life. This will was never signed by him. At the time of his death he was the owner of real estate of the value of $3,000, and of personal estate of the value of $7,800, and was indebted

in an amount not exceeding $100. The petitioner was entitled, as heir-at-law, to receive one-fifth of the estate, after the payment of debts and expenses of administration, as his distributive share.

After the decease of the said Charles the respondents prepared the following instrument, which was signed by Oliver D. Hart, George A. Hart, Antoinette H. Booth, Jane M. Nott, and the petitioner:

"To the Court of Probate, within and for the District of Berlin:

"We, heirs to the estate of Charles W. Hart, late of said New Britain, respectfully request this honorable court to appoint Oliver D. Hart administrator of said estate.

"And whereas we are informed and believe that a short time before his decease the said Charles W. Hart had a draft made of his last will, in which he made us and each of us legatees, but never executed the same; now, therefore, deeding in all things to conform to his wishes in the matter of disposing of his estate, we mutually agree, each with the other, that said draft of his last will shall have the same force and validity in the settlement of said estate and disposition of said property as if the same had been executed in accordance with all statutory requirements for the execution of wills, and that we will accept of the bequests therein contained, and made to us and each of us, in full satisfaction of our claims and interests, and the claims and interests of each of us, in and to said estate and property. And we further agree that said draft of said will shall be made a part of the files and records of said probate court, and proceeded with in the same way by it as if the same had been duly executed by the said Charles W. Hart, in accordance with the statute laws of the state of Connecticut. Dated at New Britain, this 8th day of February, A. D. 1876."

The petitioner, at the time he signed this document, was about twenty-one years of age, was ignorant of the contents of the unexecuted will, was of weak and feeble intellect and understanding, and easily influenced, and was, in fact, unduly influenced by the respondents, in whom he reposed special

confidence and trust, to execute the agreement. The agreement was unconscionable and unjust, and the petitioner did not comprehend the terms thereof, and would not have signed it had it not been for the undue influence of the respondents.

Oliver D. Hart was appointed administrator of the estate by the probate court, and it was his intention and the intention of the other respondents to present the abovementioned agreement to the court of probate and have the estate settled in accordance with its provisions and not as an intestate estate, and the respondents refused, before the bringing of the petition, to cancel or surrender the agreement, though they were requested so to do.

Upon the argument the counsel for the respondents asked the court to dismiss the bill on the ground that the subject matter was within the sole jurisdiction of the court of probate, which, in the settlement of the estate, would be obliged necessarily to pass upon the validity of the instrument, and that a court of equity had no jurisdiction to pass upon matters which were so cognizable by the probate court, but that the proper remedy would be by appeal from any order of the probate court relating to the instrument; but the court refused so to hold or to dismiss the bill.

The court, upon the facts so found, passed a decree that the agreement be set aside, and enjoined the respondents from taking any steps to settle the estate on the basis of the agreement, (except so far as the appointment of Oliver D. Hart as administrator was concerned,) or treating the estate as other than intestate.

The respondents brought the record before this court by a motion in error, assigning as error the want of jurisdiction in the court.

*C. E. Perkins*, for the plaintiffs in error.

In this state it has always been held that matters connected with the settlement of estates of deceased persons were within the sole jurisdiction of courts of probate, and courts of equity would not take cognizance of matters pertaining to the settlement of such estates, unless in cases where the difficulties in

proceeding before the probate courts were insurmountable. *Sheldon* v. *Sheldon*, 2 Root, 512; *Bacon* v. *Fairman*, 6 Conn., 121; *Bailey* v. *Strong*, 8 id., 278; *Beach* v. *Norton*, 9 id., 182; *Gates* v. *Treat*, 17 id., 388; *Bissell* v. *Bissell*, 24 id., 241. The general principle is too well settled to be contested, and the next thing is to see whether the matter in controversy is one which properly comes under the cognizance of the probate court. It is too clear for controversy that all matters pertaining to the distribution of estates, what method of distribution should be adopted, who are entitled to share, in what proportions and under what rules, is a matter for the court of probate. In several of the cases cited above the questions related to distribution, and were held not to be within the power of a court of equity for that reason. *Gates* v. *Treat*, 17 Conn., 388; *Bissell* v. *Bissell*, 24 id., 241. Nor can there be any question but that the court of probate has power to give redress to this petitioner if he has reason for it. In the cases already cited it is held that "courts of probate have all the powers of a court of chancery, and in some respects much greater powers in relation to the trials of questions within their jurisdiction." *Beach* v. *Norton*, 9 Conn., 198; *Mix's Appeal from Probate*, 35 id., 123. If the paper in question was filed in the court of probate, as is found was the intent of the respondents, and that court was asked to have the estate settled in accordance with it, it could doubtless have heard and decided the question whether it was valid or invalid for any reason set up in this bill. This being the case, it being a matter clearly within the control of the probate court, in relation to the method of distribution of the estate, what possible reason can be given why the Superior Court should interfere and prevent the question from ever coming before the probate court at all? No such power has ever been exercised in this state, nor, it is believed, anywhere else. *In re Broderick's Will*, 21 Wall., 503. What different rule is to be applied in such a case from that which is applied in case of a will? Suppose a bill alleges that the respondents have obtained a will by undue influence, or that a respondent has forged a paper which he intends to present as a will, no one

would claim that the Superior Court could interfere and enjoin the presentation of the will to the probate court; but how does that case differ from this in principle? Suppose a formal distribution by the parties under the statute had been made, will any one claim that a court of equity could deprive the court of probate of the cognizance of it?

*F. L. Hungerford,* for the defendant in error.

GRANGER, J. The respondents bring this case before us on a motion in error, and the only question arising on the record is, whether the Superior Court had jurisdiction of the matters alleged in the bill.

The respondents claim that the courts of probate have sole jurisdiction of all matters pertaining to the settlement of estates, and that courts of equity will not take cognizance of matters connected with such settlements, unless in cases where the difficulties before the probate courts are insurmountable; and that the matters here in controversy come properly under the cognizance of the probate court, and that it has power to give redress to this petitioner if he has reason for it.

That the petitioner has a right to redress is not denied, and could not be under the facts in this case, for a more palpable wrong is rarely done than the one these respondents attempted to perpetrate, and so far as they were able did perpetrate, upon the petitioner. They endeavored to divest him of his legal rights in the estate of his uncle, and so far succeeded by taking advantage of his weakness of intellect, and by keeping him in ignorance of his rights, and by abusing his confidence in them as his near relatives, as to procure his signature to an agreement, by which he, in effect, relinquished to the respondents his share as heir-at-law, worth about two thousand dollars, for the sum of sixty dollars a year during his life.

Nothing could be more grossly inequitable, and a court of equity, unless restrained by the most rigid rule of law, ought to take jurisdiction, and lay its hand on such a transaction.

There is no question but that, in all ordinary matters relating to the settlement of estates, courts of probate have sole

jurisdiction; but this is no ordinary matter.   It is an application to the Superior Court to set aside an unconscionable contract and restrain the respondents from acting under it in any manner.   The court of probate would have no power, if this contract was presented to it, to declare it void and set it aside. It might refuse to receive and act upon it in the settlement of the estate, but the contract would still be outstanding and in full force.   Suppose the court of probate should refuse to receive the contract, and should decline to settle the estate according to the terms of the unexecuted will, but should proceed to settle it as intestate estate, and distribute to the petitioner his share, what is to prevent the administrator from refusing to pay over his share to the petitioner, and claiming that he has agreed to accept the interest of one thousand dollars during his life in full of his distributive portion?   Or suppose the respondents should change their intention, and withhold the agreement from the court, and the estate should be settled and distributed as the statute provides, and the share of the petitioner should consist entirely of money, what is to prevent the administrator from refusing to pay it over, under the agreement?   And the respondents, having by undue influence operated on the weak mind of the petitioner, and induced him to sign an agreement, unconscionable and unjust, it is not unreasonable to suppose that they might again persuade him to accept the interest of one thousand dollars during his life, in lieu of his just share in the estate.   The court of probate would be powerless to prevent any such wrong, and a court of law could not restore the petitioner to the full rights which he would thereby lose.   The petitioner is entitled to be protected from every operation of such a contract as this. No court but a court of equity can effectually and adequately do this.   That court can declare the contract void, which it has done, and ought to have done, for no contract of this kind, obtained as this was, ought to be in the hands of the respondents as a contract having any force or validity.

There is no error in the judgment complained of.

In this opinion the other judges concurred.