STATE ex rel. UNION NATIONAL BANK OF GRAND FORKS v. PROBATE
COURT OF RAMSEY COUNTY.[1]

February 14, 1908.

Nos. 15,453—(201).

**Probate Court—Jurisdiction.**

The probate court is not endowed by the constitution (section 7, art. 6) with the general equity powers of courts of general jurisdiction.

**Same.**

Whether the legislature has the constitutional power to provide that the probate court may, as an incident to the administration of estates, determine and discharge equitable mortgages and liens, is not decided. Such duties have not been imposed, and in the absence of legislative enactment that court has no jurisdiction.

Writ of certiorari from the district court for Ramsey county to the probate court of that county upon the relation of the Union National Bank of Grand Forks. The facts are stated in the opinion. From an order, Hallam, J., quashing the writ, relator appealed. Affirmed.

*Clapp & MacCartney,* for appellant.

*Stringer & Seymour,* for respondent.

*Walter L. Chapin* and *J. P. Kyle,* for creditors of the estate, by consent filed briefs.

LEWIS, J.

November 14, 1903, E. M. Prouty discounted to the relator a note for $3,000, signed by George W. Downing, payable to the order of E. M. Prouty & Co., and at the same time assigned to relator a chattel mortgage executed by Downing to E. M. Prouty & Co. to secure payment of the note, purporting to mortgage property described as follows: "The following described property now in my possession, owned by me, and free from incumbrance, to wit, one hundred fifty (150) head of mixed cattle, branded ⌐ C on the left side, and being in Williams county, North Dakota, near Buford." At the time of

[1] Reported in 115 N. W. 173.

presenting the note and mortgage Mr. Prouty guaranteed its payment, and represented that Downing was the owner of the cattle and that they were located in Williams county, North Dakota. The note was not paid at maturity, and was renewed from time to time; the last renewal being November 14, 1905. Downing did not in fact own the cattle described in the mortgage; but Prouty owned several hundred head of cattle bearing the same brand and located in North Dakota and Montana.

Mr. Prouty died on March 10, 1906, and his son, Emery M. Prouty, was duly appointed administrator by the probate court of Ramsey county. The relator then made proof of his claim against the estate, based upon Mr. Prouty's guarantee of the promissory note. The claim was allowed. Certain cattle in Montana belonging to Mr. Prouty having been sold, and the proceeds having been turned over to the administrator, the relator petitioned the probate court for an order directing the administrator to pay to it the amount of its claim out of that fund, upon the theory that it had a preferred lien thereon by virtue of the mortgage. The probate court declined to hear the matter upon the ground that it had no jurisdiction, and a writ of certiorari was then sued out of the district court to review that question. The district court also determined that the probate court had no jurisdiction, and the matter was brought to this court upon appeal.

The petition, after setting forth the execution of the note and mortgage, as above stated, alleges, upon information and belief, that the said George W. Downing did not own the cattle described in the mortgage, but that, on the contrary, they were the property of E. M. Prouty; that Prouty procured the original note and mortgage, and renewals thereof, to be made out in the name of Downing for the purpose of discounting the same at the bank; that the relator was ignorant of the true situation, accepted the notes and mortgages for what they purported to be, and that the mortgage was duly recorded; that Prouty owned a large number of cattle in excess of the one hundred fifty head mentioned in the mortgage, and that either before or after the execution of the last-mentioned mortgage, viz., November 14, 1905, more than one hundred fifty cattle bearing the brand ᗘ C were removed from North Dakota to Montana, where they were

located at the death of Prouty; that there was no other lien or claim upon them; that the relator was not informed until after Prouty's death that the cattle purporting to be conveyed in the mortgage were not located in North Dakota, but were in Montana, "and thereupon relator elected to take all the cattle conveyed by its said mortgage, one hundred fifty of the cattle bearing said brand and then situated in said state of Montana, and took steps to enforce its mortgage lien upon said cattle." The petition also alleges that the Montana cattle which relator claims to have elected to hold under the mortgage were sold for $4,143.29, and the proceeds turned over to the administrator.

The relator seeks to establish a lien upon the fund, and the right is based upon its alleged equitable mortgage upon the cattle which were sold. In order to establish such right to the fund, the relator must prove what is alleged, viz., that the cattle described in the mortgage belonged to Prouty himself, and that relator had the right to appropriate the one hundred fifty head located in Montana after the death of Mr. Prouty, and, further, that, although possession was not obtained after electing to take them, nevertheless a lien attached to the fund in the hands of the administrator.

Conceding that in a proper action the Montana cattle, or the proceeds thereof, might have been appropriated to meet the debt, it is apparent that no such lien could be proven or enforced, except with the aid of a court of equity, and in our opinion the probate court possesses no such powers. The principles which determine the jurisdiction of that court can only be ascertained by a careful examination of the authorities. In Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9, 57 Am. 59 (followed in Dobberstein v. Murphy, 44 Minn. 526, 47 N. W. 171), it was held that the probate court might determine to whom the estate passed upon the death of decedent, but claims made by third parties against the land passing to an heir or devisee, based on the alleged acts of such heir or devisee, and not on the law of descent, were not involved in the administration and must be determined by some other tribunal than the probate court. In State v. Probate Court of Sibley County, 33 Minn. 94, 22 N. W. 10, it was held that after the land had been sold under an order of the probate court, the sale confirmed, the deed executed, and the administrator discharged,

the matter had passed out of the jurisdiction of the probate court, and it could not entertain an application to review and set aside the sale. Speaking of the constitutional provision (section 7, art. 6), the court said: "This confers powers to take charge of, preserve, and distribute according to law the property of decedents, but not to determine, as between the representative of the estate and a third person, the right to property claimed by each. The rights of third persons not interested in the distribution of the estate are not included in the jurisdiction." In Hurley v. Hamilton, 37 Minn. 160, 33 N. W. 912, it was held that the probate court had no general jurisdiction in regard to the partition of real estate, and that such power to make the partition as was conferred upon the probate court by statute was only given as an incident to settling the estates of deceased persons, as a step in the distribution thereof. In a later case (Kelly v. Slack, 93 Minn. 489, 101 N. W. 797) we held that the probate court had jurisdiction, as an incident to the administration and distribution of the estate, to cause the entire estate to be sold to pay specific legacies, where it appeared that the real estate could not be equitably divided; but the statute upon which that decision rested was afterwards repealed.

Another case which illustrates the limit of the jurisdiction of the probate court is Mousseau v. Mousseau, 40 Minn. 236, 41 N. W. 977, where it was held that the court had jurisdiction to direct the administrator or executor to make a conveyance, when it appeared that there was no reason why it should not be made; but it was expressly stated that the court had no jurisdiction to determine the merits of a controversy between the vendor and the vendee, where there was any dispute as to the rights of the parties under the contract of purchase. That decision rests upon the theory that under the constitution the legislature might utilize the machinery of the probate court for the simple purpose of executing a conveyance as an incident to the administration and distribution of the estate in cases where there was no controversy as to the facts. Comstock v. Matthews, 55 Minn. 111, 56 N. W. 583, illustrates the restricted character of the court's jurisdiction as limited by the statute, and it was held that the court had no jurisdiction to determine claims arising in tort, but that the claimant must bring his action against the personal representatives in the dis-

trict or other court of competent original jurisdiction. The decision is based upon the fact that formerly the adjudication of disputed claims against estates was tried in courts of general jurisdiction, and that it was not intended to confer exclusive jurisdiction of that subject-matter upon the probate court by the use of the very general language of the constitution. Kleeburg v. Schrader, 69 Minn. 136, 72 N. W. 59, throws no light upon the subject. The contract was treated as a will, and it was held that the probate court had jurisdiction to hear and determine the rights of the parties thereunder. What was said in the opinion with reference to the rights of the parties under the contract, if not a will, was not necessarily in conflict with the previous decisions in Mousseau v. Mousseau and other cases supra.

In Starkey v. Sweeney, 71 Minn. 241, 73 N. W. 859, the plaintiff in an action commenced in the district court alleged that the heirs fraudulently claimed that advancements had been made to the defendant, one of the heirs, from his father in his lifetime, and had procured a settlement of the estate upon that fraudulent basis, and were proceeding to have the probate court partition and distribute the estate to the other heirs. The court decided that the district court had no jurisdiction to restrain the heirs from proceeding with the final settlement of the estate and to call upon the administrator to account for the defendant's share. Boltz v. Schutz, 61 Minn. 444, 64 N. W. 48, is in line with the trend of the decisions already cited, and, although some general language appears in the opinion as to the jurisdiction of the probate court, the point decided was that the court had exclusive jurisdiction, and if the plaintiff had any claims or judgments against the intestate the same could only be enforced by causing the real estate to be sold.

Relator lays much stress upon the decision of State v. Ueland, 30 Minn. 277, 15 N. W. 245. The court held that the jurisdiction of the probate court included the power to construe a will whenever such construction was involved in the settlement or distribution of the estate of the testator, and that if, under the provisions of a will, a widow had the right of election, but was unable to make it by reason of her insanity, then the probate court had the power to make the election for her. In the course of the opinion Justice Mitchell called atten-

tion to the fact that prior to the time Minnesota became a state the rule prevailed in the territory that the probate court had exclusive jurisdiction over the persons and estates of all persons under guardianship, with the power to control the persons and estates of the wards, and that consequently, when the constitution was adopted, it was unreasonable to suppose that the intention was to confer upon the district court exclusive jurisdiction of all matters connected with estates, except the mere naked right of distribution. The decision was to the effect that the probate court was endowed, under the constitution, with the power to determine all incidental matters necessary to enable it to complete the administration.

It must be accepted as settled by the cases cited that the constitution did not confer exclusive original jurisdiction upon the probate court to try and determine all classes of claims; that it was intended that the lawmaking power should regulate the matter by appropriate legislation. The subject is covered in the Revised Laws of 1905 by sections 3727–3749. No provision is made for the adjustment of equitable liens. "No action at law shall lie against an executor or administrator for the recovery of money: * * * Provided, that nothing in this section shall be construed as preventing an action to enforce a lien existing at the date of decedent's death. * * *" Section 3733. The "action" referred to in this section is the proper action to be brought in a court of general jurisdiction. Conceding, without deciding, that the legislature, under the constitution, might have conferred such power upon the probate court, here is an express declaration that it has not been done. Section 3749 has no application to equitable or disputed liens. The proper meaning of that section is that where there is no dispute, and nothing to litigate, the probate court may, as an incident to the distribution of the estate, direct the executor or administrator to pay off a mortgage, pledge, or security in favor of a claimant. That section is analogous to the statute considered in Mousseau v. Mousseau, supra.

Affirmed.