# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

PLUMA M. BROWN and Others v. HERMAN L. STROM and Others.[1]

December 16, 1910.

Nos. 16,285—(9)[2]

**Jurisdiction of district court in aiding settlement of estate — injunction.**

Plaintiffs' complaint set forth: Decedent owned two hundred ten out of four hundred shares in defendant bank. The executor of his estate, who was also cashier of the bank, conspired with the other named defendants to part with control of the bank by the sale of thirty of those shares to Strom's friends, defendants herein, at an inadequate price. This sale was made nearly two months before the time for filing claims against the estate would expire. Plaintiffs were ready and had arranged to procure funds to discharge the obligations of the estate. These allegations were controverted. The district court restrained various individual defendants from disposing of their bank stock and the bank from recognizing any assignment. It is *held:*

1. A probate court is a court of record and has original and exclusive jurisdiction in the administration of the affairs of deceased persons. An

[1]Reported in 129 N. W. 136.  [2]October, 1910, term calendar.

113 M.—1.

executor has the right of possession of the personal estate of decedent and the power to dispose thereof.

2. The district court, as a court of chancery, may not interfere with the exercise of the constitutional powers of the probate court, but in the interest of justice may exercise an ancillary jurisdiction, to aid the probate court in the performance of its proper functions.

3. In the case at bar it was competent for the district court, in order to preserve the property in statu quo, to restrain the executor as an individual and other stockholders and the bank from disposing of shares of stock in that bank involved in the proper administration of the estate.

Action in the district court for Jackson county by the widow and children of John K. Brown, deceased, against Herman L. Strom, Thomas J. Knox, John W. Cowing and the Brown National Bank of Jackson to set aside two sales of bank stock made by defendant Strom, as executor of the estate of John K. Brown, deceased, to certain of the other defendants, to have the shares reassigned to him, and in case such relief were denied, then that defendant Strom be declared a trustee, for the benefit of the estate, of the shares of bank stock personally owned by him in the bank, and for an injunction restraining defendant Strom from disposing of any other shares of stock in the bank.

A temporary restraining order was issued to restrain defendant Strom from selling any of the balance of the stock belonging to the estate, and an order directing defendants to show cause why the temporary injunctions prayed for in the complaint should not be granted. The matter was heard by Quinn, J., who ordered that the writ should issue upon plaintiffs' filing a bond for the sum of $250. From that order, defendant Strom, as executor of the estate, appealed. Modified.

*Knox & Faber* and *Dunn & Carlson,* for appellants.

*E. H. Nicholas* and *Putnam & Nicholson,* for respondents.

JAGGARD, J.

The complaint of plaintiffs and respondents set forth: Plaintiffs are the widow and only heirs of John K. Brown, deceased. Under

Brown's will, defendant Strom and one Haugen were made executors. Haugen resigned, but petitioned the probate court to appoint the widow of deceased as coexecutor, to act jointly with Strom. Strom, Haugen, and deceased had been intimate friends. Notwithstanding this situation, the widow was not appointed executor, and Strom served alone. The decedent owned two hundred ten out of the four hundred shares of the capital stock of the defendant bank. Nearly two months before the time for filing claims against the Brown estate would expire, Strom sold thirty shares of the capital stock of the Brown estate to the defendants Cowing and Knox, who were directors of the bank, and, respectively, president and vice president thereof. This was pursuant to a conspiracy between them to deprive plaintiffs of control of the bank, and to transfer that control to Strom and his friends. The price paid was only $105.75 per share; whereas, in fact, the value was $125 per share. This sale was made, despite the protest of the plaintiffs, made to the probate judge, and despite notice to Strom that the said plaintiffs were "ready and willing to advance all moneys on demand that might be necessary to meet any claims or obligations of any kind or nature of the estate that required to be promptly met, and * * * that * * * they had arranged to procure the funds in order to make good the said representations." The sale and transfer of this stock lost the estate the control of the affairs of the bank, to the profit of Strom and his conspirators, was wholly unnecessary in the due administration of the estate, and would work great and irreparable injury to the estate. The complaint prayed for a temporary injunction.

The defendants, inter alia, denied the conspiracy, and asserted that the sale of the stock and its purchase were in good faith, and that its proceeds were needed and used to defray the actual bona fide indebtedness of the estate. They insisted, further, that the plaintiffs were not entitled to relief, that there was defect of parties defendant, and that the court had no jurisdiction.

The complaint was supported and opposed by affidavits. Thereupon the trial court found facts in accordance with the plaintiffs' contentions, and granted a temporary injunction, whereby defendants Knox and Cowing were restrained from disposing of the shares

of stock which they had purchased from the executor, and Strom, the executor, was restrained from disposing of any of the remaining one hundred eighty shares, Strom as an individual from disposing of any of his fifty shares, and the bank itself was restrained from disposing of any stock in the name of the estate, or of the defendant as executor of the estate. From this order the defendants appealed.

1. The principal contention of the defendants is that the district court was without jurisdiction to entertain the complaint and to grant the relief. "By this judicial raid upon the jurisdiction of the probate court the district court of Jackson county lays its hands upon the executor and determines what personal property he shall sell and what he shall not sell." The defendants refer in this connection to many cases in which the exclusive character of the jurisdiction of the probate court is sustained. See Cone v. Hooper, 18 Minn. 476 (531); Jacobs v. Fouse, 23 Minn. 51; State v. Ueland, 30 Minn. 277, 15 N. W. 245; State v. Probate Court of Sibley County, 33 Minn. 94, 22 N. W. 10; Wiswell v. Wiswell, 35 Minn. 371, 29 N. W. 166; Culver v. Hardenbergh, 37 Minn. 225, 33 N. W. 792; Reiser v. Gigrich, 59 Minn. 368, 61 N. W. 30; Boltz v. Schutz, 61 Minn. 444, 64 N. W. 48; Starkey v. Sweeney, 71 Minn. 241, 73 N. W. 859; O'Brien v. Larson, 71 Minn. 371, 74 N. W. 148; Betcher v. Betcher, 83 Minn. 215, 86 N. W. 1; Duxbury v. Shanahan, 84 Minn. 353, 87 N. W. 944; Appleby v. Watkins, 95 Minn. 455, 104 N. W. 301; Gary, Probate Law (3d Ed.) §§ 565 and 566; R. L. 1905, §§ 3705–3766; Steel v. Holladay, 20 Ore. 70, 25 Pac. 69, 10 L.R.A. 670; Adams v. Petrain, 11 Ore. 304, 3 Pac. 163.

It is clearly settled on the one hand: The probate court in this state is a court of record of original jurisdiction, and as such has exclusive jurisdiction of the administration of the estate of deceased persons. Under the orders of the probate court, an executor has power to dispose of the goods and chattels of the deceased. No heir or beneficiary can hold or retain possession of such portions of the personal estate as he may assert or claim title to. To so permit would lead to such confusion as would bring disaster to the probate court. The jurisdiction of the district court with respect to administration by the probate court ordinarily is appellate only.

The probate court has the power in appropriate cases, on proper application, to direct its officers as executors. See Cone v. Hooper, supra; Wiswell v. Wiswell, supra; Culver v. Hardenbergh, supra; Starkey v. Sweeney, supra; Jacobs v. Fouse, supra; State v. Ueland, supra; O'Brien v. Larson, supra; Boltz v. Schutz, supra; Betcher v. Betcher, supra; Appleby v. Watkins, supra; Graffam v. Ray, 91 Me. 234, 39 Atl. 569; Steel v. Holladay, supra.

On the other hand, there is a primary difference between the jurisdiction, the positive powers, and the machinery of a general court of equity, and of a mere probate court, in general, and under the laws of this state in particular. The law is concerned not so much with working out an abstract and ideal harmony with respect to the limits of this dual jurisdiction as it is with the efficient administration of practical justice thereby. When a situation presents itself to which in its nature a probate court is not equal, a court of equity may step in and see that justice is done. This it can do without trespassing at all on the constitutional authority of the probate court, and without any interference with the due administration of an estate of a decedent. There need be no conflicting judgment or orders. As to matters properly within its jurisdiction, the probate court is supreme, and its decrees are given conclusive force, subject, of course, to appeal. But a court of equity may effectuate, without in any wise controverting, such decrees; that is, if occasion arises, a chancellor may act in aid of a probate court, and make possible the proper performance of its functions in administering an estate by preserving that estate. The jurisdiction of the equity court in such cases is ancillary to that of the probate court. There need be no conflict, nor interference, but merely assistance. Doubtless such occasions are rare; but their infrequency is no argument why equity should not afford a remedy for the wrong when the situation arises.

In the case at bar, upon the assumption of the truth of the facts stated—and we wish to make it clear upon that assumption only, and not upon a determination that the merits are with the plaintiffs —a state of facts was presented for which the probate judge could provide no adequate remedy. Defendants Knox and Cowing were

clearly beyond the jurisdiction of that court. They were total strangers to the estate. Less clearly, both Strom as an individual and the bank were beyond the reach of the instrumentalities available to the probate court. Strom, as executor, it could control and direct. Proceeding further upon this assumption, we think that the complaint clearly made out a case for equitable interference, to prevent the loss of control of the bank by the plaintiffs through the conspiracy of the defendants and for an inadequate price. The district court had jurisdiction to preserve the estate for administration by the probate court; i. e., to maintain the status quo until the probate court had opportunity to perform its functions with respect thereto, and to restrain third persons, over whom the probate court had no jurisdiction, from interfering with the estate until controversies had been settled. Such a course would in no wise disturb the probate court. On the contrary, it would tend to make it possible for it to discharge its constitutional duties.

This view of the law is sustained by authorities which are more apt than numerous. In Heirs v. Adams, 22 Vt. 50, at pages 58, 59, Redfield, J., said: "It has always been said that courts of probate have as much the exclusive jurisdiction of the matters coming properly within their cognizance as any other courts of law. Hence, when the courts of chancery have interfered in the settlement of estates, it has been merely in aid of the powers of the court of probate, and where, from some defect of the adequate means, it was not in their power to do the same justice, in the same way, which could be done in a court of equity, and which it seemed desirable should be done in the particular case. This is a policy established in a long and uniform course of decisions, upon grounds which have always approved themselves to the profession and the citizens at large, and which there is no necessity and no sufficient reason now to disregard. * * * It is to be borne in mind, too, in determining how far a court of chancery will interfere to aid the jurisdiction of the courts of probate, that the probate courts already have a very extensive chancery jurisdiction, by which claims, in some respects of purely equitable cognizance, may be there adjusted. But for the most part that court has not, by its mode of procedure, such ade-

quate means of giving full redress in matters of purely equitable nature as exist in the courts of equity. Hence, as a general thing, no doubt, the court of chancery retains its ancillary jurisdiction to the same extent over matters in the probate courts which it has over those in the common law courts." To the same effect it was held in McDonald v. Aten, 1 Oh. St. 293.

In Mock v. Pleasants, 34 Ark. 63, creditors of an estate brought an action against the administrators and others, and alleged, among other things, that the administratrix and others conspired together to have land sold and bought in at a nominal price (twenty-five cents per acre) for her benefit, and that the sale was the result of that conspiracy; and accordingly they prayed for relief against the fraud. It was held the probate court had exclusive jurisdiction in matters of estates of deceased persons, and that a court of chancery can take cognizance thereof only upon one of the equitable grounds of jurisdiction. A settlement of an administrator in the probate court has the effect of a judgment, and can be set aside by a court of chancery for fraud. Accordingly, although the acts had been confirmed by the probate court, the demurrer was overruled, and the defendant was required to answer.

In Hart v. Hart, 44 Conn. 327, heirs signed a contract for the settlement of an estate in probate court according to the draft of an imperfect will. One weak-minded heir, ignorant of his rights, unduly influenced by the others, relinquished a much larger interest than he received. He brought an action in the superior court to set aside the agreement and for an injunction against the proceedings in the probate court under it. It was held that the court of probate would be powerless to prevent such a wrong, and that the superior court had jurisdiction to provide a remedy. And see Crain v. Crain, 17 Tex. 80, and Piatt v. Longworth's Devisees, 27 Oh. St. 159.

This view of the law finds some, but not explicit, sanction by indirect reasoning in some Minnesota cases. State v. Probate Court of Sibley County, 33 Minn. 94, 22 N. W. 10; Farnham v. Thompson, 34 Minn. 330, 26 N. W. 9, 57 Am. Rep. 59; Mousseau v. Mousseau, 40 Minn. 236, 41 N. W. 977; Comstock v. Matthews, 55 Minn.

111; 56 N. W. 583; State v. Probate Court of Ramsey County, 103 Minn. 325, 115 N. W. 173. And see McCord v. Knowlton, 79 Minn. 299, 82 N. W. 589. And see 3 Pomeroy, Equity Jurisprudence (3d Ed.) § 1154, and note.

2. Defendants have urged a number of additional considerations, which we regard as without merit. Thus they insist that the writ should have been denied on the merits. It is evident from the statement of the case that the controversies therein involved should be determined on trial, and not on affidavits. In this opinion, accordingly, the court has proceeded upon the express assumption that the facts as stated by plaintiffs are substantially correct. The court does not predetermine the case, but leaves the question of the merits to the trial court, subject to reversal according to law.

A number of objections are addressed to the parties to the action. Defendants insist that the probate court alone could determine who the heirs at law may be, and plaintiffs' allegations on this subject in the complaint were negligible. For purposes merely of this action, however, and in order that the estate might be preserved until formal administration, the allegations as to plaintiffs' right to litigate were adequate. If, in its final decree, the probate court should determine that these plaintiffs had not the right which they claim, no harm would result. That chance, however, would appear to be fanciful in this case.

Defendants also urge that there was defect of parties, inasmuch as the creditors were not joined. One of the causes of complaint against the executor, however, was that the stock was sold nearly two months before the time for filing claims against the estate would expire. Until such time the creditors would necessarily be undetermined. Moreover, there is no reason why the creditors, when known, could not be made parties at a later time to as good advantage. The whole object of the proceedings, however, was to preserve the estate. The rights of the creditors were in no way invaded, nor threatened. What was done must have been done for their advantage.

Nor is there any force to the contention that, because Strom was improperly joined in his personal and in his representative capaci-

ties, the action did not lie. We think the injunction did not lie against Strom as an executor, because the probate court could control his action; and to that extent the injunction order must be modified. But the effect of this error in no wise vitiated the action as to Strom as an individual, or as to the other defendants.

Defendants insist that until administration and distribution the heirs at law have no more right to the possession of personal property than a mere stranger, and cannot maintain any action in relation thereto. To some circumstances this principle undoubtedly applies. But defendants' contention that under no circumstances can the heirs maintain an action with respect to the property they have inherited while in the hands of an executor is unreasonable and unsound. On the death of the decedent the property descends to the heirs at law. In each case it is subject to the payment of the debts. Primary responsibility therefor is on the personalty. But the beneficial interest in the real property and in the corpus of the personalty is in the heirs. The personal representative of the decedent, charged with the duty of administration, has neither the rights nor the responsibilities of an owner. In special cases the right of the heirs may be shown to be superior to those of the personal representative, and may be successfully asserted against the personal representative and third persons by the heirs. For reasons previously herein stated, we think that the present, upon the assumption of the truth of the complaint, is such a case.

3. The question then arises whether the complaint states a cause of action. In large measure consideration of this subject has been necessarily anticipated. Upon the facts, if proved, plaintiffs are entitled to certain relief. The nature of that relief has been previously indicated. It is true that the complaint does not recognize the right of the probate court to administer the estate, and the ancillary character of the interference by the district court, nor does the complaint allege plaintiffs' intention to proceed in probate court. In point of fact the whole proceeding is a new one in this state. Plaintiffs were necessarily uncertain as to what was the propr procedure. Their complaint was almost inevitably an informal one. We are not called upon, however, to consider or determine the final

form such complaint should assume. The only question before us is whether it was sufficient to entitle plaintiffs to some relief by way of temporary injunction. We have expressed our opinion that the injunction was properly granted, except as to Strom as an executor. In this view the defects in the complaint are not at present material.

To conclude: Exclusive jurisdiction to administer the estate must be conceded to the probate court. The propriety of the acts of Executor Strom in selling the stock must be determined originally in the probate court, with the right of appeal to the district court in regular course. The jurisdiction of the district court in this action is to merely preserve the estate in statu quo. If, as the result of the proceedings in the probate court, Executor Strom is removed, his successor may be authorized by the probate court to bring an action in the district court to set aside the sale of the stock, or other relief may be afforded. If the plaintiffs take no action in the probate court, the defendants will have their remedy as in other cases of neglect of a plaintiff to take further steps to procure relief. If the plaintiffs attempt to proceed directly in the district court, instead of in the probate court, the district court must refuse to grant any further relief. That court performed its function in the premises when it issued an injunction to maintain the status quo during the time necessary to determine the propriety and good faith of Strom's act, in proceedings to be conducted in the probate court.

The judgment of the trial court must accordingly be modified. The case is remanded, with directions to rescind the order in so far as it affects Strom as an executor.

START, C. J. (dissenting).

I dissent. I am of the opinion that the district court has no jurisdiction in this case. Reduced to its lowest terms, the claim of the respondents is that the district court had jurisdiction because the stock was sold for a sum materially less than its value, that there was no necessity for the sale, which was made to deprive them of the control of the bank, and that they have no adequate remedy, except by this action. This conclusion by no means follows from the premises. Probate courts of this state have original and exclu-

sive jurisdiction over the estates of deceased persons and persons under guardianship. While they have no general equity powers, yet as respects the subjects committed by the constitution to their exclusive jurisdiction they have the plenary powers, legal and equitable, that any court has. Therefore the exercise of such jurisdiction cannot be interfered with by an injunction from the district court. O'Brien v. Larson, 71 Minn. 371, 74 N. W. 148.

It is true that the jurisdiction of the probate court does not extend to the determination of controversies between the personal representative of the decedent and a third person as to property claimed by him under the decedent, or an heir, or to an action to recover real or personal property from such third person, or to collect a debt alleged to be due from him to the estate. There are also other exceptions, but none of them is here relevant. It is also true that in exceptional cases courts of equity may exercise jurisdiction where the probate court, without such aid, is manifestly unable to afford an adequate remedy for an alleged wrong to the estate, or heirs, or creditors. Is this such a case? It seems to me that it is not, but an attempt to usurp a jurisdiction belonging exclusively to the probate court, which, if sustained, will be far-reaching in its effect, and open wide the door for the interference of the district court with the probate court in the exercise of its jurisdiction.
case. The executor had a right to sell the stock, if he did so in good
The probate court has full power to deal adequately with this faith and for a fair price. If he fraudulently sold the stock for an inadequate price, the probate court can surcharge his account with the loss. There is no allegation that either he or his surety is insolvent. Hence the alleged jurisdiction of the district court must rest solely upon the further claim that the stock was sold unnecessarily, for the fraudulent purpose of depriving the respondents of the ultimate control of the bank, in case the stock should be assigned to them in the ordinary course of the administration of the estate. If such be the case, the respondents have a plain and adequate remedy, by applying to the probate court to direct the executor to bring an action in the district court to obtain a return of the stock to the executor, or to permit them to bring and prosecute such action in

the name of the executor. Such action could be promptly brought; for it is to be presumed that the probate court would, if a proper showing was made, grant the relief asked for, and, if necessary, remove the executor. The respondents, as heirs, have not an absolute right to have the bank stock belonging to the estate retained by the executor and assigned to them on a distribution of the residue of the estate by the probate court. Whether such a course shall be taken depends upon the necessities of the estate and the direction of the probate court in the exercise of a fair discretion. The ignoring of the probate court in this case necessarily deprives it of control of the executor as to the bank stock, including that still in his hands, and of jurisdiction to determine whether the stock shall be sold if the necessities of the administration require it, or retained and eventually assigned to the respondents.