# IN RE ESTATE OF GERHARDT PAUL MOKROS.
## JEROME G. RAIDT, SPECIAL ADMINISTRATOR OF ESTATE OF LUISE MOKROS, AND ANOTHER v. UNITED STATES OF AMERICA.

130 N. W. (2d) 121.

July 10, 1964—No. 39,188.

*Walter U. Hauser* and *John H. Farley*, for appellants.

*John W. Douglas,* Assistant Attorney General, *Miles W. Lord,* United States Attorney, and *Alan S. Rosenthal* and *Stephen B. Swartz,* Attorneys, Department of Justice, for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from a judgment of the District Court of Hennepin County which affirmed a decree of distribution of the probate court of that county dated April 17, 1959, which directed distribution of all assets in the estate of Gerhardt Paul Mokros, deceased, (after payment of all claims and expenses of administration) to the Attorney General of the United States pursuant to the latter's Vesting Order No. 13405[1]

---

[1]Vesting Order No. 13405 provides in part: "That all right, title, interest and claim of any kind or character whatsoever of the persons named in subparagraph 1 hereof in and to the Estate of Gerhardt Paul Mokros,

(14 Fed. Reg. 3825), which is dated June 14, 1949, and which was issued under the authority conferred upon the Attorney General by 55 Stat. 839, 50 USCA App. § 5(b)(1), and 40 Stat. 1020, 50 USCA App. § 7(c), of the Trading with the Enemy Act.[2]

At the time of his death on November 5, 1942, the decedent's parents, John Mokros and Louise Mokros, survived him and were nationals of Germany. They died subsequent to the commencement of the probate proceedings herein and left surviving them their three children, Erick, Rudolph, and Ingborg Mokros, brothers and sister of decedent, who are presently decedent's sole surviving heirs. Rudolph Mokros and Ingborg Mokros have always been and now are nationals of Germany. Erick Mokros is presently a patient of the U. S. Veterans Hospital in Perry Point, Maryland.

---

deceased, is property payable or deliverable to, or claimed by, the aforesaid nationals of a designated enemy country (Germany);

\* \* \* \* \*

"There is hereby vested in the Attorney General of the United States the property described above, to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States."

[2]50 USCA App. § 5(b)(1), provides: "During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise—

\* \* \* \* \*

"(B) \* \* \* regulate \* \* \* any acquisition holding, \* \* \* use \* \* \* of \* \* \* any property in which any foreign country or a national thereof has any interest,

"\* \* \* and any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President, \* \* \*."

50 USCA App. § 7(c), provides in part: "If the President shall so require any money or other property \* \* \* belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy \* \* \* shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; \* \* \*."

This appeal is taken on behalf of the three surviving children of John and Louise Mokros. They contend that under the vesting order the Attorney General of the United States did not acquire any right or property in the estate of Gerhardt Paul Mokros (1) because the decree of distribution therein had not been made prior to October 19, 1951, on which date a joint resolution of Congress,[3] 65 Stat. 451, 50 USCA App. p. XX, terminated the state of war between the United States and the Government of Germany; and (2) because under the Treaty of Friendship, Commerce and Navigation between the United States and the Federal Republic of Germany, entered into on October 29, 1954, a national policy had been invoked by the United States with respect to the seizure of enemy property under which all rights and interests of the United States in or to enemy property, including that involved in the estate of decedent here, had been relinquished. 7 U. S. Treaties 1840, Article V, §§ 1, 2, and 4, and Article IX, §§ 2, 3, and 4.[4]

---

[3]The joint resolution provides: "* * * That the state of war declared to exist between the United States and the Government of Germany by the joint resolution of Congress approved December 11, 1941, is hereby terminated and such termination shall take effect on the date of enactment of this resolution: *Provided, however,* That notwithstanding this resolution and any proclamation issued by the President pursuant thereto, any property or interest which prior to January 1, 1947, *was subject to vesting or seizure under the provisions of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, or which has heretofore been vested or seized under that Act,* including accruals to or proceeds of any such property or interest, *shall continue to be subject to the provisions of that Act* in the same manner and to the same extent as if this resolution had not been adopted * * *. Nothing herein * * * shall alter the status, as it existed immediately prior hereto, under that Act, of Germany or of any person with respect to any such property or interest." (Italics supplied.)

[4]Article V, § 1, of such treaty provides: "Property of nationals and companies of either Party [United States and Federal Republic of Germany] shall receive the most constant protection and security within the territories of the other Party."

Article V, § 2, provides: "The dwellings, offices, warehouses, factories and other premises of nationals and companies of either Party located within the territories of the other Party shall not be subject to molestation

Gerhardt Paul Mokros died November 5, 1942, in action on Guadalcanal as a member of the United States Armed Forces. He was then a resident of Hennepin County and, as indicated above, was survived by his parents, John and Louise Mokros, nationals of Germany. At the time of his death, the Trading with the Enemy Act, 50 USCA App. § 5, as above set forth, was in effect.[5]

---

or to entry without just cause. Official searches and examinations of such premises and their contents, when necessary, shall be made only according to law and with careful regard for the convenience of the occupants and the conduct of business."

Article V, § 4, provides: "Property of nationals and companies of either Party shall not be taken within the territories of the other Party, except for the public benefit and in accordance with due process of law, nor shall it be taken without just compensation. Such compensation shall represent the equivalent of the property taken and shall be made in an effectively realizable form and without unnecessary delay. Adequate provision shall have been made at latest by the time of the taking for the determination and the giving of the compensation."

Article IX, § 2, provides in part: "Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment with respect to acquiring, by purchase, lease, or otherwise, and with respect to owning and possessing, personal property of all kinds, both tangible and intangible."

Article IX, § 3, provides: "Nationals and companies of either Party shall be accorded national treatment, within the territories of the other Party, with respect to acquiring property of all kinds by testate or intestate succession or under judicial sale to satisfy valid claims. Should they because of their alienage be ineligible to continue to own any such property, they shall be allowed a period of at least five years in which to dispose of it."

Article IX, § 4, provides: "Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment and most-favored-nation treatment with respect to disposing of property of all kinds."

[5]In the administration of this act, property seized thereunder was at first assigned to the Alien Property Custodian by Executive Order No. 9095 (7 Fed. Reg. 1971), as amended by Executive Orders No. 9193 (7 Fed. Reg. 5205) and No. 9567 (10 Fed. Reg. 6917). On October 15, 1946, the Attorney General of the United States succeeded to the duties and functions of the Alien Property Custodian. Executive Order No. 9788 (11 Fed. Reg. 11981). All property then in the possession of the Alien Property

On March 19, 1945, proceedings were instituted in the probate court of Hennepin County to probate his estate. The assets of the estate consist of personal property of the value of more than $11,000. On April 17, 1945, Harriet Foster was appointed general administratrix of the estate, and on September 7, 1962, Marquette National Bank of Minneapolis was appointed administrator de bonis non to succeed her.

The proceedings remained dormant for many years. One June 14, 1949, the vesting order of the Attorney General was issued. On December 13, 1953, John Mokros died, leaving him surviving his wife, Louise, and the children above named. On April 17, 1959, the probate court of Hennepin County entered the decree of distribution involved in this appeal. On October 13, 1959, the appeal to the District Court of Hennepin County was taken on behalf of Louise Mokros and the surviving children. On March 11, 1961, during the pendency of this appeal, Louise Mokros died and at the district court hearing Jerome G. Raidt, as special administrator for her estate, and Jerome G. Raidt, as special administrator of the estate of John Mokros, were substituted therein as appellants.

On June 15, 1962, the district court made findings and ordered judgment, from which the present appeal is taken. Therein it found:

"That by the Decree of * * * Distribution * * * it has been determined that the Decedent did die on November 5, 1942, * * *; that his sole surviving heirs were * * * Louise Mokros, his mother, and * * * John Mokros, his father, who are his only heirs-at-law; that at the time of the death of Decedent, they were citizens and residents of the country of Germany and domiciled therein, and have been ever since, * * * and that the Attorney General of the United States as such Attorney General is now entitled to distribution of all of the residue of the Estate of Decedent; that from this finding the Appellants [Louise] Mokros, Erick Mokros, Rudolf Mokros and Ingborg Mokros, of which [Louise] Mokros is now deceased, appealed * * * and as:

---

Custodian was at that time transferred to the Attorney General and all property thereafter seized under the act was seized directly and held by the Attorney General.

### "CONCLUSIONS OF LAW

"That Appellants have failed to establish that said Decree * * * is erroneously made * * *; that the same should be, and hereby is approved; that the appeal should be dismissed and the Decree * * * herein reestablished, and the remaining physical assets * * * distributed as ordered in said Decree of Distribution."

In a memorandum attached to the foregoing, the court stated:

"* * * If title vests at the time of the decree of distribution, then the Probate Court should be reversed and the property distributed to the statutory heirs.

\* \* \* \* \*

"With considerable reluctance, this Court, feeling that the equities * * * are the other way, must decide the vesting 'took place on the date of decedent's death.'

\* \* \* \* \*

"Upon appointment and qualification, the representative becomes immediately vested, *for the purposes of administration*, with the legal title and right to possession of all personal property of decedent at the time of his death. Dunnell's Minn. Digest, Sec. 3568. In Re Bergman Estate, [182 Minn. 128, 233 N. W. 806]; In Re Butler Estate, 205 Minn. 60.

"* * * In effect, there is no difference from real property. The representative is entitled to title of both classes if necessary to pay debts and administrative costs. The only distinction is that he must exhaust the personal property first. * * *

\* \* \* \* \*

"While no flat declaration of this principle has been found in Minnesota cases, it seems to be clearly spelled out in the cases [citing In re Estate of Fretheim, 156 Minn. 366, 194 N. W. 766; Brown v. Strom, 113 Minn. 1, 129 N. W. 136; Hardenbergh v. Commr. of Int. Rev. (8 Cir.) 198 F. (2d) 63; Holtan v. Fischer, 218 Minn. 81, 15 N. W. (2d) 206].

\* \* \* \* \*

"This conclusion is further confirmed by the * * * fact that the in-

terest of an heir or devisee in either real or personal property will descend to his heirs if he dies before the decree of distribution; that such interest is subject to assignment or levy. See Watkins v. Bigelow, 93 Minn. 361; that our legislature has recognized such to be the situation by the inclusion in Section 571.42 M. S. A. (the garnishment statute) of the right to garnish all moneys or profits of an heir or devisee in the hands of a representative. See Fulton v. Okes, 195 Minn. 257; O'Day v. O'Day, 171 Minn. 280.

"There thus appears to be no difference * * * as to real or personal property. Title shall vest on the death of the owner. The only real distinction is that personal property must be first used and exhausted to pay debts and costs of administration. * * *

"This leaves only * * * to be considered * * * the suggestion that the Treaty of Friendship entered into between the United States and the Federal Republic of Germany on October 29, 1954, has in effect relinquished all rights which the United States Government, through its Attorney General, had theretofore had.

* * * * *

"In the case of Rogers v. The Hartford-Connecticut Trust Co. 165 Fed. Sup. 116, the same argument was made. The Court said:

" 'There is in the treaty language, however, no clear indication of any intent to repeal, in whole or in part, the provisions of the joint resolution. Repeal by implication is not favored, and no such implication would be justified here.' p. 120."

■ We are of the opinion that the district court correctly construed applicable Federal statutes; the joint resolution; and the treaty as above described, and that thereunder after payment of claims and the expenses of administration all property remaining in the estate of Gerhardt Paul Mokros is presently vested in the Attorney General of the United States "in the interest of and for the benefit of the United States." The Attorney General's rights therein were created under 50 USCA App. §§ 5(b)(1) and 7(c), known as the Trading with the Enemy Act. It is true that the estate consists of personal property only, but we cannot escape the conclusion that title thereto vested in decedent's heirs, who were nationals of Germany as of the date of his

death, in the same manner as would real property, subject only to the limitation that distribution thereof to such heirs would be withheld until claims against the estate and the expenses of its administration were paid. In re Estate of Butler, 205 Minn. 60, 284 N. W. 889; Brown v. Strom, 113 Minn. 1, 129 N. W. 136; Hardenbergh v. Commr. of Int. Rev. (8 Cir.) 198 F. (2d) 63.[6] Ordinarily an administrator possesses only a limited or qualified title in personal property in the estate of his decedent. This qualified title is held by him for the purpose of insuring payment of claims, expenses of administration, and other statutory allowances in the estate and determining the identity of the legal heirs therein. This temporary or qualified holding would not divest the surviving heirs of their title and ownership of such property. In re Estate of Bergman, 182 Minn. 128, 233 N. W. 806; Samels v. Hartford Acc. & Ind. Co. 163 Minn. 209, 213, 203 N. W. 620, 622; Reiser v. Gigrich, 59 Minn. 368, 61 N. W. 30. This is evidenced by various statutes which permit creditors of surviving heirs to garnishee assets belonging to such survivors and held by such an administrator, Fulton v. Okes, 195 Minn. 247, 252, 253, 262 N. W. 570, 573; Minn. St. 571.42, subd. 2, and to levy execution thereon. See, Watkins v. Bigelow, 93 Minn. 361, 101 N. W. 497. It is further evidenced by the court's recognition of the principle that, when an heir dies prior to the decree of distribution in an estate in which he possesses an interest, such interest will descend to his heirs under the decree of distribution in the estate. Johrden v. Pond, 126 Minn. 247, 148 N. W. 112; Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L. R. A. 663.

■ We do not agree with appellants' contention that the final decree in the probate proceedings constituted the source of title of the heirs to the property. Rather, it determined the identity of such heirs, and also that all obligations of the estate had been paid. In re Estate of Butler, 205 Minn. 60, 284 N. W. 889; Brown v. Strom, 113 Minn. 1, 129 N. W. 136. But the actual ownership of the property by the heirs became effective on November 5, 1942, the date of death of Gerhardt Paul Mokros. His death became the source of their title. Simultaneously with their acquisition of title to and ownership of the prop-

---

[6]See, 16 Am. Jur., Descent and Distribution, §§ 15, 20.

erty, it became subject to seizure under the Trading with the Enemy Act and was seized thereunder on June 14, 1949. The decree of distribution in the estate merely gave recognition to such facts and ordered distribution of the property in the estate in accordance therewith. This conclusion is supported by Todeva v. Oliver Iron Min. Co. 232 Minn. 422, 45 N. W. (2d) 782, and the principles set forth therein were not modified or altered by the subsequent decision in In re Trusteeship under Will of Schmidt, 256 Minn. 64, 97 N. W. (2d) 441, as contended by appellants. In the latter case, the property involved was a contingent interest in a trust fund. There the court stated (256 Minn. 87, 97 N. W. [2d] 456):

"* * * The right to receive the gift of the corpus * * * was postponed until after the expiration of the trust period according to its terms and was made to depend on the happening of stipulated conditions which might or might not exist at that time. These requirements created a contingency inconsistent with an immediate vesting of the corpus upon the death of the trustor. * * *

* * * * *

"* * * The enjoyment of the gift of the corpus was clearly postponed and under our decisions, unless a contrary intent is shown, the corpus would not vest until the time for distribution and payment of the principal arrived."

There the court reaffirmed the principle set forth in Todeva v. Oliver Iron Min. Co. *supra*, that a vested interest in personal property wherein payments have been deferred was subject to seizure under the Trading with the Enemy Act.

■ Title and ownership to the personal property in the estate here having vested in the Attorney General by the vesting order described, there was nothing in the subsequent joint resolution of Congress, dated October 19, 1951, which terminated the war with Germany, or in the subsequent Treaty of Friendship, Commerce and Navigation which divested him of such title and ownership. By its terms, the joint resolution provided that—

"* * * any property or interest which prior to January 1, 1947,

was subject to vesting or seizure under the provisions of the Trading With the Enemy Act * * * or which has heretofore been vested or seized under that Act * * * shall continue to be subject to the provisions of that Act * * *. Nothing herein * * * shall alter the status, as it existed immediately prior hereto, under that Act * * * of any person with respect to any such property or interest."

Likewise, there is nothing in the language of the Treaty of Friendship, Commerce and Navigation which prescribed that it was to be retroactive in effect with respect to property seized prior to its adoption. Rogers v. Hartford-Connecticut Trust Co. (D. Conn.) 165 F. Supp. 116, 120.

Affirmed.